[Cite as *In re V.H.*, 2013-Ohio-5408.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: V.H.

C.A. No.     26894

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL11-08-1880

DECISION AND JOURNAL ENTRY

Dated: December 11, 2013

HENSAL, Judge.

{¶1} Appellant, V.H., appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division that adjudicated him a delinquent child for committing one count of gross sexual imposition in violation of Revised Code Section 2907.05(A)(4). For the following reasons, this Court affirms.

I

{¶2} In June 2011, J.S., then seven years old, was staying at his maternal grandfather's home in Akron. He and his mother had moved in one month earlier. Also residing in the home were J.S.'s uncle, his grandfather, the grandfather's girlfriend, and the girlfriend's three children, which included V.H. V.H., who was then 13 years old, and J.S. shared a bedroom that was on the same floor as a bedroom occupied by J.S.'s mother. The boys each had their own bed. V.H.'s sisters also shared a different bedroom on the same floor, while J.S.'s grandfather and V.H.'s mother shared a bedroom that was located upstairs in the attic.

{¶3} J.S.'s mother testified at the adjudication hearing that her then-boyfriend was with her in her bedroom when he got up to use the restroom that was located down the hall. When he came back to their room, he told J.S.'s mother that he noticed a light on in the boys' bedroom. Because J.S. and V.H. were supposed to be asleep, J.S.'s mother got up to investigate. When she opened the door to the boys' bedroom, she observed both boys with their pants and underwear pulled own below their buttocks. According to J.S.'s mother, J.S. was lying on his stomach part way on his bed and V.H. was on top of him. Although she could not tell if V.H.'s penis was erect, J.S.'s mother testified that V.H. was attempting to anally penetrate J.S.

{¶4} J.S.'s mother instructed both boys to get up and go to the attic with her to speak with her father about what she observed. After she relayed to her father and V.H.'s mother what she saw, J.S.'s mother took him downstairs to her bedroom while V.H. remained upstairs and was "whooped" with a belt as punishment. V.H. was sent back to his room, while J.S. spent the night with his mother and her boyfriend in their room.

{¶5} J.S.'s mother took him to Akron Children's Hospital the next day where he was interviewed by a social worker from the CARE (Children at Risk Evaluation) team and medically evaluated. J.S. told the interviewer that V.H. "put [his] middle private part all the way up in my butt." When asked what he meant by "middle part," J.S. told the interviewer it was a "pee-pee." J.S. relayed to the interviewer that V.H. told him not to tell anyone. According to J.S., he wanted to tell someone but was scared and thought his mother would not believe him. The medical examination did not reveal any physical injury.

{¶6} A complaint was filed against V.H. that alleged he was a delinquent child by reason of committing an attempted rape, "in violation of * * * [R.C.] 2907.02(A)(1)(b)/2923.02," a felony of the second degree if committed by an adult. V.H. denied the charges, and the matter

proceeded to an adjudication hearing. A magistrate found him delinquent for committing an attempted rape, but he was granted a new adjudication hearing when the trial court sustained his objections to the magistrate's decision. The case proceeded to a second adjudication hearing wherein V.H. was found delinquent for committing the lesser included offense of gross sexual imposition, a violation of R.C. 2907.05(A)(4), which is a felony of the third degree if committed by an adult. The trial court found the statements J.S. made during his CARE team interview about V.H.'s penetration "to be less than credible" as he indicated in the interview he was asleep at the time of the incident and had no memory of the incident when he testified at trial. The trial court further found that "[J.S.'s] statements relating to penetration or attempted penetration were recounts of what he heard his Mother speaking of as opposed to his personal memory."

{¶7} The trial court entered dispositional orders, which are stayed pending resolution of his appeal. V.H. raises two assignments of error for this Court's review. For ease of analysis, we rearrange V.H.'s assignments of error.

II

ASSIGNMENT OF ERROR II

THE INSUFFICIENT EVIDENCE IN APPELLANT V.H.'S DELINQUENCY VIOLATED OF (SIC) SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION, INFRINGING ON APPELLANT V.H.'S DUE PROCESS RIGHT.

{¶8} In his second assignment of error, V.H. argues that the evidence was insufficient to adjudicate him a delinquent child for having committed gross sexual imposition. This Court disagrees.

{¶9} "Although juvenile delinquency cases are technically civil in nature, this Court applies the same sufficiency and manifest weight standards of review in a juvenile delinquency case that it applies in an adult criminal appeal due to the 'inherently criminal aspects' of

delinquency proceedings * * *." *In re L.F.*, 9th Dist. Lorain No. 10CA09880, 2012-Ohio-302, ¶ 6, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6. "Whether the evidence is legally sufficient to sustain [an adjudication of delinquency] is a question of law" that this Court reviews de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support [an adjudication of delinquency] is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The test for sufficiency requires a determination of whether the State has met its burden of production at trial." *State v. Collmar*, 9th Dist. Summit No. 26496, 2013–Ohio–1766, ¶ 7.

{¶10} V.H. was adjudicated a delinquent child for violating one count of Revised Code Section 2907.05(A)(4), which provides that: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age * * *." "'Sexual contact' means any touching of an erogenous zone of another, including * * * the * * * buttock * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶11} The Ohio Supreme Court has held that "the element of sexual contact in an R.C. 2907.05(A)(4) violation requires a mens rea of purpose." *State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 28. "The statute requires a specific intent behind the touching—the touching must be intended to achieve sexual arousal or gratification. Since there is a specific intent motivating the touching, it follows that the act of touching must be intentional." *Id*. at ¶ 25.

{¶12} "In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer a purpose of sexual arousal or gratification from the type, nature and circumstances of the contact, along with the personality of the defendant." *State v. Edwards*, 9th Dist. Lorain No. 12CA010274, 2013-Ohio-3068, ¶ 10, quoting *State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 64; *In re L.F.*, 2012-Ohio-302 at ¶ 10, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185 (9th Dist.1991). V.H. argues that the evidence did not establish that he engaged in sexual contact with J.S. as the State did not prove that the contact was done for the "purpose of sexual arousal or gratification."

{¶13} The State presented the testimony of several witnesses, including the victim's mother. She testified that, when she entered the room, V.H. was on top of J.S., who was lying on his stomach halfway on his bed. Both boys had their pants and underwear down past their buttocks. According to J.S.'s mother, V.H. was "trying to penetrate [J.S.] * * * [i]n his butt * * * [with] [h]is penis." She could not tell if V.H. had an erection.

{¶14} V.H. maintains that the State failed to set forth evidence of his maturity or knowledge of sexual behaviors from which the trial court could infer that he engaged in the conduct for the purpose of sexual arousal or gratification. He fails to cite to any Ohio case law that requires the prosecution to produce evidence of a minor defendant's maturity or knowledge of sexual behaviors in order to prove that the sexual act was done for his or her sexual arousal or gratification. In this case, a rational trier of fact could reasonably infer V.H.'s sexual arousal or gratification from the "totality of the acts themselves" based on the testimony from J.S.'s mother in which she stated that his penis made contact with J.S.'s buttocks. *In re L.F.*, 2012-Ohio-302 at ¶ 11. Accordingly, V.H.'s adjudication of delinquency for committing one count of gross

sexual imposition was supported by sufficient evidence. His second assignment of error is overruled.

ASSIGNMENT OF ERROR I

APPELLANT V.H.'S DELINQUENCY FOR GROSS SEXUAL IMPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF SECTION 3, ARTICLE IV OF THE OHIO CONSTITUTION, CREATING A MISCARRIAGE OF JUSTICE.

{¶15} V.H. argues that his delinquency adjudication was against the manifest weight of the evidence. This Court disagrees.

{¶16} To determine whether V.H.'s convictions are against the manifest weight of the evidence, this Court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the [judgment] is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* "The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction." *Otten* at 340.

{¶17} V.H. maintains that his delinquency adjudication is against the manifest weight of the evidence because the testimony of J.S.'s mother was "self-serving, unreliable and contradicted." He contends J.S.'s mother fabricated the incident as a way to get V.H. and his

family out of the house so as to have an unhindered relationship with her father and to allow J.S. to have his own room.

{¶18} J.S.'s mother testified that she had a close relationship with her father both before and after his relationship with V.H.'s mother. Her father assisted her financially "all the time." She did not feel as if V.H.'s mother impeded her relationship with her father. J.S.'s mother testified that she would have preferred to have her own home because she was 25 years old and able to care for herself. According to J.S.'s mother, it was important to her that J.S. had his own bedroom.

{¶19} V.H.'s mother testified that her relationship with J.S.'s mother was "[o]ff and on. Basically, everything was good as long as she got what she wanted. If she didn't get it, * * * it's like a back-off situation or try and find another way to get what she wanted." There was no testimony presented as to the nature of the relationship of the women at the time the incident occurred.

{¶20} V.H. argues that the testimony of J.S.'s mother was contradicted by testimony from defense witnesses. V.H.'s mother testified that after her son was punished, he was sent back downstairs to his bedroom. As V.H. was proceeding downstairs, J.S. and his mother were walking upstairs to the attic. According to V.H.'s mother, she saw the victim smile at her son as they passed on the landing. Later that same evening, she observed J.S.'s mother and her boyfriend in their bedroom watching a movie, smoking, joking, and laughing. J.S.'s mother admitted that she did not contact the police or take her son to a hospital that night. V.H. argues that her behavior is not indicative of someone whose father described her as "hysterical" and crying when she brought the boys up to the attic to tell him what she saw.

{¶21} V.H.'s younger sister, who was 12 years old at the time of the trial, testified that she had a bedtime routine of going into her brother's room after their mother at the end of the night. V.H.'s sister testified that on the night of the incident, when she entered the boys' bedroom, the light was off. She turned it on while she talked to her brother. According to V.H.'s sister, she shut the light off when she left and closed the door behind her. On the way to her bedroom, she passed J.S.'s mother, who was standing by her bedroom door, in the hallway. She testified that because her bedroom door was open, she could see J.S.'s mother in the hallway by her own bedroom door. V.H.'s sister testified that J.S.'s mother stood by the door no more than a minute. J.S.'s mother then yelled for the boys, went into her bedroom to put on a shirt, and then yelled out to her father and V.H.'s mother. Like her mother, V.H.'s sister also testified that she saw J.S. smile at her brother as he and his mother were going up to the attic after V.H. was disciplined.

{¶22} In addition, V.H.'s sister testified that, when she passed J.S.'s mother in the hallway, she was not wearing her glasses. J.S.'s mother testified that she only takes her glasses off when she goes to bed. She stated that she cannot see more than three feet in front of her without her glasses. According to J.S.'s mother, there was "no question in [her] mind" that she had her glasses on when she went into the boys' bedroom.

{¶23} V.H. also called the victim, who was then 9 years old, as a witness as upon cross-examination. At the time of trial, which was over 19 months after the incident, J.S. could not recall anything about the day in question. He could not positively identify V.H. at trial. V.H. argues that the victim's inability to remember the incident shows that his mother made up the incident.

{¶24} This Court cannot conclude that, based on the evidence in the record, this is the "exceptional case" where the evidence weighed heavily against V.H.'s delinquency adjudication. "[A] [trier of fact] is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Miles*, 9th Dist. Summit No. 26187, 2012-Ohio-2607, ¶ 24, quoting *State v. Rice*, 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 35. "A conviction is not against the manifest weight of the evidence because the [trier of fact] chose to credit the State's version of events." *State v. Minor*, 9th Dist. Summit No. 26362, 2013-Ohio-558, ¶ 28, quoting *State v. Breneman*, 9th Dist. Wayne No. 11CA0039, 2012-Ohio-3632, ¶ 9. After reviewing the testimony of the two mothers, this Court cannot conclude that the evidence supports V.H.'s theory that J.S.'s mother formulated a scheme to get V.H. and his family out of the home. While the testimony of V.H.'s sister contradicted that of J.S.'s mother on whether she was wearing her glasses and whether she entered the room before calling the boys to go upstairs, the trial court did not create a "manifest miscarriage of justice" when it credited the testimony of J.S.'s mother over that of V.H.'s sister. *Otten*, 33 Ohio App.3d at 340. Based on a careful review of the record, this Court cannot conclude that this is the "exceptional cas[e]" wherein the trial court lost its way and that V.H.'s adjudication as a delinquent child for committing gross sexual imposition is against the manifest weight of the evidence. *Id*. Accordingly, his first assignment of error is overruled.

III.

{¶25} V.H.'s first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

LORI A. CURD, Appellate Review Office, School of Law, The University of Akron, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.