[Cite as *In re J.H.*, 2015-Ohio-4471.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: J.H.

C.A. No.     27528

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL 13-03-000460

DECISION AND JOURNAL ENTRY

Dated: October 28, 2015

CARR, Judge.

{¶1}    Appellant, J.H., now appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, seeking to challenge his adjudication of delinquency by virtue of his having committed the offense of sexual imposition.  This Court affirms in part, reverses in part, and remands for further proceedings.

I.

{¶2}    Prior to the events giving rise to this appeal, J.H. and O.H. were friends who had known each other for about four to five years.  J.H. was seventeen years old, O.H. was sixteen years old, and the two belonged to the same youth group.  In July 2012, both attended a weeklong outing with their youth group.  The group went to see a movie one night, and O.H. sat next to J.H.  The two held hands and, at some point, J.H. reached his hand into O.H.'s athletic shorts in an attempt to digitally penetrate her.  O.H. then drew away from J.H. and did not speak

to him again. Approximately two weeks later, O.H. told her mother about the incident, and her mother took her to file a police report.

{¶3} A detective filed a complaint against J.H., alleging that he appeared to be a delinquent child by reason of his having committed the crime of sexual imposition, as defined by R.C. 2907.06(A)(1). Because the alleged conduct underlying the complaint occurred in Stark County, the detective filed the complaint in the Stark County Court of Common Pleas, Juvenile Division. J.H. initially entered an admission to the charge, and a magistrate adjudicated him delinquent based on his admission. The matter was then certified to the Summit County Court of Common Pleas, Juvenile Division, for a dispositional hearing because J.H. was a Summit County resident.

{¶4} After J.H.'s case was transferred to Summit County, he notified the court that he wished to withdraw his admission to the charge. As such, the case was formally returned to Stark County to allow him to file a motion to withdraw his admission. Stark County ultimately granted J.H.'s motion and set the matter for an adjudicatory hearing before a magistrate. Following the hearing, the magistrate adjudicated J.H. delinquent by virtue of his having committed the crime of sexual imposition. J.H. filed objections to the magistrate's decision, but the court overruled his objections and adopted the magistrate's adjudication of delinquency. The matter was then once again certified to Summit County for disposition.

{¶5} At the conclusion of the dispositional hearing, the Summit County Court of Common Pleas, Juvenile Division, placed J.H. on offender-specific probation and ordered him to undergo psychological treatment. The court also ordered him not to have any contact with the victim and classified him as a Tier I sexual offender registrant.

**{¶6}** J.H. now appeals from his adjudication of delinquency and raises two assignments of error for our review.

II.

**<u>ASSIGNMENT OF ERROR I</u>**

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIME CHARGED BEYOND A REASONABLE DOUBT.

**{¶7}** In his first assignment of error, J.H. argues that his adjudication of delinquency is against the manifest weight of the evidence. He also asserts a sufficiency challenge, as he claims that the State failed to prove each element of the charge against him beyond a reasonable doubt. We address each argument in turn, beginning with his challenge to the sufficiency of the evidence.

**Sufficiency of the Evidence**

**{¶8}** "[T]his Court applies the same sufficiency * * * standard[] of review in a juvenile delinquency case that it applies in an adult criminal appeal due to the inherently criminal aspects of delinquency proceedings * * *." (Internal quotations and citations omitted.) *In re V.H.*, 9th Dist. Summit No. 26894, 2013-Ohio-5408, ¶ 9.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The test for sufficiency requires a determination of whether the State has met its burden of production at trial." *State v. Edwards*, 9th Dist. Summit No. 25679, 2012-Ohio-901, ¶ 7.

{¶9} "No person shall have sexual contact with another, not the spouse of the offender[,] * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." R.C. 2907.06(A)(1). "Offensive sexual contact is, by definition, not consensual." *State v. Raber*, 9th Dist. Wayne No. 13CA0020, 2014-Ohio-249, ¶ 12. "An element of [the] offense [of sexual imposition] is knowledge of the offender that the contact was offensive or recklessness in not knowing." *Akron v. Hawley*, 9th Dist. Summit No. 12556, 1987 WL 5572, *3 (Jan. 21, 1987).

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

Former R.C. 2901.22(B).

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

Former R.C. 2901.22(C). "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, * * * [or] pubic region, * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶10} O.H. was sixteen years old when the facts giving rise to this appeal occurred. She testified that she and J.H. were friends and had known each other for about four to five years because they attended the same church. Both belonged to their church's youth group and, in July 2012, the group went on a weeklong trip. During the days, the group members would perform various community services and, during the evenings, they would relax and engage in social activities. The last Saturday night of their trip, the group decided to see a movie together.

{¶11} O.H. testified that she was one of the last members of the youth group to get her movie ticket, so most of the group was already seated when she walked into the theater. O.H. spotted an empty seat next to J.H. and sat down beside him. She testified that no one was sitting directly on her other side, but there were people seated farther down the row on her side and one member of their group was sitting on J.H.'s other side, such that he occupied the middle seat. Otherwise, all of the other members of the youth group were seated in the rows in front of O.H. and J.H.

{¶12} O.H. testified that she and J.H. watched the movie for approximately 20 minutes before they started holding hands. She did not say which of them initiated the contact, but she denied that she and J.H. had any romantic history. According to O.H., the two had always just been friends. While she admitted that J.H. had tried to kiss her on one occasion, she testified that she thought he had tried to do so as a joke.

{¶13} On direct examination, O.H. testified that she and J.H. held hands for about 10 minutes before she decided that she felt uncomfortable doing so. She then removed her hand from his, placed her hands in her lap, and continued to watch the movie. A short while later, O.H. felt a light sensation on her hip bone beneath the athletic shorts and the t-shirt she was wearing. O.H. testified that the sensation felt "like a bug," so she did not react to it. Instead, she ignored it and continued to watch the movie. Shortly thereafter, however, O.H. felt J.H.'s hand in her shorts. She testified that when she felt J.H.'s hand slip under her underwear and touch the outside of her vagina, she looked at J.H. and asked him what he was doing. According to O.H., J.H. responded "you know what I'm doing." O.H. testified that she then drew away, tucked herself into a fetal position, and sat in that manner for the remainder of the movie. She estimated that J.H.'s hand was inside her shorts for a few seconds before she pulled away. According to

O.H., when she pulled away from J.H. and he removed his hand, he told her not to tell anyone what had happened. She indicated that she never gave J.H. consent to place his hand inside her shorts.

{¶14} After O.H. and her mother reported this incident to the police, her case was assigned to Detective Matthew Shatzer. Detective Shatzer asked O.H. to place a recorded phone call to J.H. and to prompt him about the incident. The recording of the call itself was not introduced into evidence, but O.H. summarized the call during her testimony. According to O.H., J.H. ultimately told her that she "should have come to [him]" if what had happened bothered her. She testified that she then got upset and ended the call. She agreed to call J.H. back, however, and apologized for getting upset. She testified that J.H. then gave her "a little I'm sorry." When asked what J.H. specifically said, O.H. testified that he said "[m]y bad."

{¶15} During the course of his investigation, Detective Shatzer interviewed J.H. on two occasions. J.H. admitted that he placed his hand inside O.H.'s shorts and tried to digitally penetrate her, but said that he could not do so because her shorts were too tight. Detective Shatzer testified that J.H. repeatedly said that O.H. had given him permission to touch her. Nevertheless, he also told the detective that "he did not feel right about what was going on."

{¶16} J.H. argues that his adjudication of delinquency is based on insufficient evidence because there was no evidence (1) that any sexual contact occurred, or (2) that he either knew the touching that occurred was offensive or was reckless in that regard. According to J.H., he "did not touch [O.H.]'s genitals, he simply rubbed his hand across her thigh."

{¶17} O.H. specifically testified on direct examination that J.H.'s hand touched the outside of her vagina. Moreover, J.H. admitted to Detective Shatzer that he placed his hand inside O.H.'s shorts and attempted to digitally penetrate her. Sexual contact includes the

touching of a person's "thigh, genitals, * * * [or] pubic region, * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). At the very least, there was evidence that J.H. touched O.H.'s pubic region. Accordingly, viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State set forth sufficient evidence of sexual contact.

{¶18} The next question is whether the State set forth sufficient evidence that J.H. either knew the sexual contact that occurred here was offensive or that he was reckless in that regard. When conducting a sufficiency analysis, the question is strictly whether the State satisfied its burden of production. *See State v. Brooks*, 9th Dist. Summit No. 23237, 2007-Ohio-1424, ¶ 7 ("[S]ufficiency tests the burden of production while manifest weight tests the burden of persuasion."). In answering that question, we are mindful that we must view all of the facts in a light most favorable to the State. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus.

{¶19} On the issue of sufficiency, this case presents a close call. Viewing the evidence in favor of the State as we must, however, we cannot conclude that J.H.'s adjudication of delinquency is based on insufficient evidence. That is because, even if J.H. did not know his conduct was offensive to O.H., a rational trier of fact could have concluded from the evidence that he acted recklessly in that regard. *See* R.C. 2907.06(A)(1).

{¶20} There was no evidence that O.H. and J.H. were ever romantically involved before these events occurred. According to O.H.'s testimony on direct examination, the two only shared a brief and mild form of physical contact before J.H. reached under her clothing and touched her genitals. Specifically, they held hands for about 10 minutes before O.H. withdrew her hand, placed her hands on her lap, and continued to watch the movie. According to O.H., J.H. then placed his hand inside her shorts and touched the outside of her vagina. She did not

invite him to do so, and one could not infer from her testimony that his conduct amounted to a logical progression of the limited physical contact the two had shared up to that point. Moreover, J.H. did not immediately withdraw his hand when O.H. asked him what he was doing. Instead, he replied "you know what I'm doing," and it was O.H. who drew away. A rational trier of fact could have concluded that, by touching O.H. in the manner that he did after only briefly holding hands with her, J.H. acted with heedless indifference and perversely disregarded a known risk; to wit: that his conduct was likely to offend O.H. *See* Former R.C. 2901.22(C) (recklessness defined). As further support for that conclusion, there was evidence that J.H. immediately told O.H. not to tell anyone what had happened when she drew away from him. There also was evidence that J.H. later told the police that he "did not feel right" about what had happened. A rational trier of fact could have concluded that, had he truly believed his conduct was not offensive, J.H. would not have told O.H. to remain silent about what had happened and would not have experienced the feeling that it was not "right." All of the foregoing facts, when viewed in favor of the State, support the conclusion that the State satisfied its burden of production. Accordingly, J.H.'s adjudication of delinquency is not based on insufficient evidence.

**Weight of the Evidence**

{¶21} "[T]his Court applies the same * * * manifest weight standard[] of review in a juvenile delinquency case that it applies in an adult criminal appeal due to the inherently criminal aspects of delinquency proceedings * * *." (Internal quotations and citations omitted.) *In re V.H.*, 2013-Ohio-5408, at ¶ 9.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Id.*

{¶22} This Court has already outlined the testimony that O.H. gave on direct examination. On cross-examination, O.H. admitted that hand-holding is a romantic form of touching and that, while she assumed she and J.H. were just friends, there was some question in her mind regarding the status of their relationship. She also admitted that the statement she gave to the police two weeks after this incident differed from the testimony she gave at trial. O.H. did not tell the police that she and J.H. stopped holding hands for a period of time before he reached over and touched her. Instead, she told the police that she and J.H. initially held hands on the armrest between their chairs before moving their hands into her lap. She told the police that J.H. then put his hand on her side and slipped it beneath her clothes. He then slid his hand across her hip towards her front and reached into her shorts. She admitted that she described the event to the police as one continuous course of conduct rather than J.H. reaching for her at some point after she had broken their physical contact. She also admitted that she never specifically told the police that J.H. touched her vagina. Further, she agreed that J.H. stopped touching her when she said something to him. O.H. agreed that, prior to that point, she never told J.H. to stop, stood up, yelled, or otherwise did anything to express her discomfort.

{¶23} J.H. did not testify on his own behalf, but several of his statements came in through Detective Shatzer. As previously noted, the detective testified that J.H. admitted that he tried to digitally penetrate O.H. According to J.H., however, O.H. gave him permission to do so. Much like O.H., J.H. told Detective Shatzer that he and O.H. had held hands in her lap before he

touched her hip and then moved his hand beneath her shorts. He also told Detective Shatzer that he asked O.H. several times whether she was okay with him touching her and that she continued to say either "yes" or "I don't care." Detective Shatzer testified that J.H. eventually agreed that the phrase "I don't care" is not a "yes." Even so, J.H. consistently maintained that O.H. gave him permission to touch her. Moreover, while Detective Shatzer testified that J.H. said he "did not feel right" about what had happened, he also testified that he could not recall J.H. ever "actually [coming] out and [saying] * * * there was wrong doing." Detective Shatzer confirmed that his investigation led him to conclude that J.H. had touched O.H.'s pubic region rather than her vagina.

{¶24}  J.H. argues that his adjudication of delinquency is against the manifest weight of the evidence because the record does not support the conclusion that he either knew O.H. would find his actions offensive or that he was reckless in that regard. Under these particular facts and circumstances, we must agree. Accordingly, we must conclude that the trial court lost its way in adjudicating J.H. delinquent.

{¶25}  Both O.H. and J.H. told Detective Shatzer that they held hands for a period of time and, at some point, they moved their hands onto O.H.'s lap. They also both told the detective that J.H. slid his hand under O.H.'s clothes, touched her side and hip, moved his hand across her front and into her shorts, and tried to touch her genitals. Up until that point, there was no evidence that O.H. expressed any discomfort to J.H. She did not stand up. She did not tell him to stop. She did not push his hand away, and there was no testimony that she squirmed or otherwise demonstrated any form of resistance. When O.H. finally said something to J.H. and pulled away from him, he stopped touching her and did not bother her any further. Although J.H. told O.H. not to say anything about the incident, there were several reasons why he might

have done so. Moreover, J.H.'s use of the phrase "my bad," during his later phone conversation with O.H. was not necessarily an admission of guilt. O.H. admitted that she became upset during their phone call and that she apologized to J.H. before he said "my bad" in return. Accordingly, his statement just as easily could have been meant to convey that he was sorry for upsetting her, not that he was admitting to any actual wrongdoing. Because the recording of the conversation was not introduced, one can only speculate as to what J.H. meant by his statement.

{¶26} Having carefully reviewed the record, we cannot conclude from the evidence presented that J.H. either knew his actions were offending O.H. or that he was reckless in that regard. *See* R.C. 2907.06(A)(1). The evidence supports the conclusion that two teenagers who had known each other for a number of years were experimenting with one another physically when one of them became uncomfortable and notified the other. Up until that point, O.H. gave no outward indication that J.H.'s touch had offended her. In fact, she acquiesced in their physical contact by holding his hand and taking it into her lap. When she finally pulled away from J.H. and made it clear that she was uncomfortable, J.H. stopped touching her. Were this Court to agree that J.H. should be adjudicated delinquent based on this record, the line between acceptable and criminal behavior would be blurred to an unprecedented degree. An individual wishing to initiate physical contact with another would be left to guess whether a person who was initially receptive to his or her advances might later decide that they were, in fact, offended by what occurred. To avoid possible prosecution, individuals would have to seek verbal permission from others for every different type of physical contact prior to initiating that contact. While it might be wise for individuals, particularly young ones, to err on the side of caution when initiating physical contact with another individual, we cannot conclude that such a requirement is a reasonable one.

**{¶27}** This Court certainly sympathizes with any emotional trauma O.H. experienced as a result of this incident. It may well be that J.H.'s behavior upset O.H. and that there was a turning point where she decided that she was no longer comfortable engaging in physical contact with him. For J.H. to either know that he offended her or to have been reckless in that regard, however, O.H. had to somehow communicate her discomfort to him. On balance, the record does not support the lower court's conclusion that J.H. either knew his actions were offensive to O.H. or that he was reckless in that regard. *Compare Hawley*, 1987 WL 5572, at *3 (sexual imposition conviction affirmed where girl physically and verbally tried to put a stop to defendant's advances and he later stated that "maybe he shouldn't have done it"). Accordingly, we must conclude that this is the exceptional case where the evidence weighs heavily against the adjudication of delinquency. *See Otten*, 33 Ohio App.3d at 340. Because J.H.'s adjudication of delinquency is against the manifest weight of the evidence, his first assignment of error is sustained on that basis.

## ASSIGNMENT OF ERROR II

> THE STATE OFFERED NO EVIDENCE OF CORROBORATION AS REQUIRED BY ORC §2907.06(B).

**{¶28}** In his second assignment of error, J.H. argues that this Court should overturn his adjudication of delinquency because the State failed to tender any evidence to corroborate O.H.'s testimony. We disagree.

**{¶29}** The sexual imposition statute provides that no person shall be convicted of sexual imposition "solely upon the victim's testimony unsupported by other evidence." R.C. 2907.06(B). "The corroborating evidence necessary to satisfy [the statute] need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's

testimony is satisfactory." *State v. Economo*, 76 Ohio St.3d 56 (1996), syllabus. For example, "[a] defendant's own statements can * * * serve as corroborative evidence." *State v. Roy*, 9th Dist. Lorain No. 13CA010404, 2014-Ohio-5186, ¶ 50, citing *State v. Golden*, 5th Dist. Stark No. 2008CA00182, 2009-Ohio-1624, ¶ 18-21.

{¶30} Although we have already determined that J.H.'s adjudication of delinquency is against the manifest weight of the evidence, that determination does not render the foregoing assignment of error moot. That is because "[c]orroboration is not an element of the offense, but is merely an ancillary evidentiary requirement." *Akron v. Myers*, 9th Dist. Summit No. 20743, 2002 WL 392492, *2 (Mar. 13, 2002). A trial court, therefore, must determine the corroboration requirement before any verdict can be rendered. *See Economo* at 60 ("The corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency to be determined by the trial judge, not a question of proof, which is the province of the factfinder.").

{¶31} J.H. argues that the State failed to satisfy the corroboration requirement because it "produced no evidence to support the testimony of [O.H.]" He notes that O.H. waited approximately two weeks to report this incident and only did so because her friend insisted that she tell her mother. He argues that the State never sought the testimony of O.H.'s friends, her mother, or any other members of her youth group so that they might be able to testify about her emotional state near the event. Accordingly, he avers that "[n]othing was offered to give any indication that something took place or to evidence [O.H.'s] state of mind near the event."

{¶32} J.H. never disputed that the foregoing incident occurred. He freely admitted to Detective Shatzer that he held hands with O.H., touched her hip and side, and reached into her shorts in an attempt to digitally penetrate her. The only material difference between his statement to the detective and O.H.'s statement to the detective was that he described their

encounter as being consensual. Accordingly, J.H.'s own statement, as introduced through the testimony of Detective Shatzer, corroborated O.H.'s statement to a large degree. *See Roy*, 2014-Ohio-5186, at ¶ 50, citing *Golden*, 2009-Ohio-1624, at ¶ 18-21. J.H. has not cited any legal authority standing for the proposition that the State was required to provide additional evidence to corroborate O.H.'s testimony in this matter. *See* App.R. 16(A)(7). Absent any further argument and authority from J.H., we cannot conclude that the State failed to satisfy R.C. 2907.06(B)'s corroboration requirement. *See Economo* at 60 ("Slight circumstances or evidence which tends to support the victim's testimony is satisfactory [evidence of corroboration].") As such, J.H.'s second assignment of error is overruled.

                                     III.

{¶33} J.H.'s second assignment of error is overruled. His first assignment of error is overruled in part and sustained in part. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

                                                      Judgment affirmed in part,
                                                      reversed in part,
                                                      and cause remanded.

                              ———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT


HENSAL, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RACHEL M. RICHARDSON, Assistant Prosecuting Attorney, for Appellee.