[Cite as *In re T.L.*, 2016-Ohio-252.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE:

      T.L.

CASE NO. 1-15-24

ALLEGED DELINQUENT CHILD.

O P I N I O N

Appeal from Allen County Common Pleas Court
Juvenile Division
Trial Court No. 2014JG31987

**Judgment Affirmed**

**Date of Decision: January 25, 2016**

APPEARANCES:

    *F. Stephen Chamberlain* **for Appellant**

    *Kenneth J. Sturgill* **for Appellee**

**SHAW, P.J.**

{¶1} Adjudicated delinquent child-appellant T.L. brings this appeal from the April 20, 2015 disposition of the Allen County Common Pleas Court, Juvenile Division, wherein T.L. was ordered to serve, *inter alia*, 90 days in the Allen County Juvenile Detention Center after T.L. was adjudicated delinquent by reason of committing Robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree if committed by an adult.

*Relevant Facts and Procedural History*

{¶2} On November 12, 2014, a complaint was filed alleging that T.L. was a delinquent child by reason of committing Robbery in violation of R.C. 2911.02(A)(2). T.L. denied the allegation.

{¶3} On February 6, 2015, T.L. filed a notice of alibi, indicating that at the time of the alleged offense he was in Toledo for counseling. (Doc. No. 20).

{¶4} On February 10, 2015, the State filed a motion to compel discovery regarding T.L.'s notice of alibi. (Doc. No. 21).

{¶5} On February 13, 2015, T.L. filed a second notice of alibi, stating that at the time of the alleged incident he was at his friend's residence. (Doc. No. 23).

{¶6} On March 18, 2015, the matter proceeded to an adjudicatory hearing. At the hearing the State called four witnesses including the alleged victim of the crime, K.W., who testified that on August 19, 2014, he was riding his bicycle and

listening to music on his headphones when his bicycle tire was struck by another bicycle. K.W. indicated that the impact knocked him off of his bicycle. K.W. testified that T.L., who K.W. did not know at the time but later identified, then told K.W. to give T.L. his Beats by Dre headphones and his cell phone. When K.W. refused to hand over his things, T.L. punched K.W., took the headphones and the cell phone, and rode off on his own bicycle.

{¶7} K.W. testified that he followed T.L. up the street and that T.L.'s bicycle chain came off. K.W. testified that T.L. then attempted to hide behind a tree, so K.W. approached T.L. and told T.L. to fight him for his things. K.W. testified that T.L. then came out and punched K.W. again in the eye, and rode off on K.W.'s bicycle with the rest of K.W.'s things.

{¶8} In T.L.'s case-in-chief, he called four witnesses on his behalf including his friend Z.W., who testified that at the time of the alleged incident T.L. was at his house playing video games. At the conclusion of the hearing the trial court took the matter under advisement.

{¶9} On March 23, 2015, the trial court filed a judgment entry summarizing and analyzing the evidence that had been presented. The trial court then found beyond a reasonable doubt that T.L. was delinquent by reason of committing Robbery in violation of R.C. 2911.02(A)(2).

{¶10} On April 16, 2015, the matter proceeded to a dispositional hearing. The trial court ordered T.L. to serve, *inter alia*, 90 days in the Allen County Juvenile Detention Center. A judgment entry memorializing this disposition was filed April 20, 2015. It is from this judgment that T.L. appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THERE WAS INSUFFICIENT EVIDENCE FOR THE CONVICTION IN THAT NO RATIONAL TRIER OF FACT COULD HAVE FOUND THE ESSENTIAL ELEMENTS OF THE ROBBERY WERE PROVEN BEYOND A REASONABLE DOUBT.**

**ASSIGNMENT OF ERROR 2**
**THE CHILD IS ENTITLED TO A REVERSAL ON MANIFEST-WEIGHT OF THE EVIDENCE THAT THE TRIER OF FACT CLEARLY LOST ITS WAY AND THE CONVICTION MUST BE REVERSED AND A NEW TRIAL ORDERED.**

**ASSIGNMENT OF ERROR 3**
**THAT T.L. RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL AND [WAS] THUS DEPRIVED OF HIS RIGHT TO COUNSEL.**

*First Assignment of Error*

{¶11} In his first assignment of error, T.L. argues that he was improperly adjudicated delinquent by reason of committing Robbery. Specifically, T.L. argues that there was insufficient evidence presented to support his adjudication.

{¶12} The standard of review applied in determining whether a juvenile court's finding of delinquency is supported by sufficient evidence is the same

standard applied in adult criminal convictions. *In re I.L.J.F.,* 12th Dist. Butler No. CA2014–12–258, 2015–Ohio–2823, ¶ 24. Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard,* 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶13} In this case T.L. was adjudicated delinquent by reason of committing Robbery in violation of R.C. 2911.02(A)(2), which reads,

> **(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:**
>
> **\* \* \***
>
> **(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]**

{¶14} The State called four witnesses in order to prove its case against T.L. The first was Patrolman Shane Huber of the Lima Police Department. Patrolman Huber testified that on August 19, 2014, he responded to a call involving a robbery with a juvenile victim in Lima, Ohio, at approximately 7:14 p.m. Patrolman

Huber testified that he spoke with the alleged victim and noticed that he had an injury to his eye.

{¶15} The State next called K.W., the alleged victim. K.W. testified that on August 19, 2014, he was riding his bicycle home while listening to music streamed from his cell phone to his Beats by Dre headphones.[1] K.W. testified that someone came up behind him while he was riding and put his bike tire on K.W.'s bike tire, causing K.W. to fall off of his bike. K.W. testified that after he fell off his bike the person who knocked him off told him to "run [his] shit," which K.W. testified meant "[g]ive me your shit, give me all everything that you got." (Tr. at 9). K.W. testified that he refused to give the person his property. K.W. testified that he did not know the person, and had never dealt with him before. K.W. testified that the person started punching him, and he swung back, but the person got away with K.W.'s headphones and his cell phone. K.W. testified that the person rode off on his own bicycle.

{¶16} K.W. testified that the person rode up the street on his bike but his chain "pop[ped] off" so he went and hid behind a tree. (Tr. at 10). K.W. testified that he followed the person up the street and told him to "come out here and come fight me for my stuff." (*Id*. at 11). K.W. testified that the person then came out and hit K.W. again in his eye and this time the person took K.W.'s bike and rode

---

[1] K.W. testified specifically that Beats by Dre headphones were expensive and that they were easily identifiable because of the "B" on the side of them. (Tr. at 8).

off on it. K.W. testified that he went into a nearby "casino" and told them he had just been robbed, so the police were called. (*Id*. at 12). K.W. testified that he spoke with the police at the scene, that the injury to his eye was photographed, and that he was treated for his injuries but he was not taken to the hospital.

{¶17} After K.W. recounted the events from the date of the incident, K.W. was asked if the person who hit him and took his property that day was in the courtroom and K.W. identified T.L. as the person who had robbed him. K.W. testified that he had previously identified T.L. via a photo lineup that the police had put together. K.W. testified that when he was shown T.L.'s photograph he told the officers he was completely sure it was him, a "ten" out of "ten." (Tr. at 15). K.W. also testified that at one point after the robbery T.L. sent him a message on Facebook stating that it was not T.L. who had robbed K.W.

{¶18} On cross-examination K.W. testified that he gave officers a description of his assailant's clothing and a physical description of his assailant including that his assailant had a blonde strip in his hair and that he had "jacked up" teeth, meaning off-color yellow. (Tr. at 16-20).

{¶19} The State also called Investigator Tim Goedde, a Juvenile Officer with the Lima Police Department. Officer Goedde testified that he was assigned to K.W.'s case and spoke with him a few days after the incident. He testified that when he brought K.W. in to interview him K.W.'s eye was still swollen and

bruised. Officer Goedde testified that based on K.W.'s description of his assailant having a blonde streak in his hair Officer Goedde asked around to see if anyone had any idea who it might be. Officer Goedde testified that he was eventually informed that T.L. fit the description. Officer Goedde testified that he pulled T.L.'s photograph from OLAY, which contains everyone's ID photograph. Officer Goedde testified that he then asked Detective Jennings to do a photo lineup for him with K.W., to see if K.W. identified T.L.

{¶20} Officer Goedde testified that in T.L.'s ID photo T.L. did not have a blonde streak in his hair. Officer Goedde testified that he pulled a total of 20 photographs of people who looked similar to T.L. and put them in the photo lineup. Officer Goedde testified he had no interaction with K.W. during the photo lineup, that Detective Jennings handled the photo lineup, and that Detective Jennings indicated to him that K.W. identified photograph number four, which was T.L., as his assailant.

{¶21} Officer Goedde testified that after T.L. was identified he attempted to speak with T.L. and that he left his card on the door at T.L.'s residence. Officer Goedde testified that he was never able to speak with T.L.

{¶22} Officer Goedde also testified that T.L. filed an initial alibi in this case indicating that he was at counseling in Toledo at the time of the incident. Officer Goedde testified that he looked into investigating that alibi but T.L.

changed his alibi and stated that he was with friends at the time of the incident. Officer Goedde testified that he spoke to two of the witnesses listed as alibi witnesses by T.L., but he could not get all of the listed alibi witnesses to speak with him.

{¶23} The State also called Detective Todd Jennings of the Lima Police Department.[2] Detective Jennings testified that Officer Goedde asked him to do a photo lineup with K.W. in this case to see if K.W. could identify a suspect. Detective Jennings testified that he was given approximately 20 photographs in separate folders and that he did not know the victim or who the purported suspect was. Detective Jennings testified that he handed the photographs one at a time to K.W. and that K.W. indicated that the person in photograph number four was his assailant. Detective Jennings testified that K.W. indicated he was absolutely sure. Detective Jennings testified that he told Officer Goedde that K.W. indicated photograph number four and that was his only involvement in this case. After all four of its witnesses had testified, the State rested its case.

{¶24} T.L. now argues on appeal that there was insufficient evidence presented by the State to adjudicate him delinquent by reason of T.L. committing Robbery. Notably, the only arguments T.L. makes to support his claims are that K.W. lacked credibility and that K.W.'s in-court identification should not carry as

---

[2] Detective Jennings actually testified before Officer Goedde, but for the sake of the clearest narrative we present his testimony out of order.

much weight because K.W. had already been exposed to T.L.'s photograph in the photo lineup. Neither of these arguments challenge the actual sufficiency of the evidence presented by the State; rather they challenge the weight of the evidence. T.L. has thus not made any arguments supporting his assignment of error that there was insufficient evidence presented to adjudicate him delinquent by reason of committing Robbery.[3]

{¶25} Nevertheless, the State clearly did present sufficient evidence in this case. The victim, K.W., plainly testified that while riding his bicycle home one evening another person on a bicycle rode up behind him, hit his tire, and knocked K.W. off of his bicycle. K.W. testified that the person then demanded his possessions and when K.W. refused to give them K.W. was struck. K.W. testified to chasing down his assailant, being struck again in the eye, and he testified that the assailant took his bicycle at that time. K.W. provided officers with a description of his assailant and the officers used that description to find T.L. K.W. then identified T.L. in the photo array. The photo from the photo lineup did not even contain the blonde streak K.W. had seen on the date of the incident because it was an older photograph, yet K.W. still identified T.L. with absolute certainty. Further, K.W. identified T.L. in court and stated he was certain it was T.L. who hit him and took his things.

---

[3] Notably, T.L. actually combines his first two assignments of error and argues them together in his brief to this Court.

{¶26} Based on these facts we cannot find that the State presented insufficient evidence for the trial court to find beyond a reasonable doubt that T.L. was delinquent by reason of committing Robbery. Therefore T.L.'s first assignment of error is overruled.

*Second Assignment of Error*

{¶27} In T.L.'s second assignment of error, he argues that his adjudication was against the manifest weight of the evidence. Specifically, T.L. argues that the victim's identification was not credible and that T.L. had an alibi.

{¶28} We apply the same manifest weight of the evidence standard reviewing a juvenile delinquency case that we do to a criminal appeal. *In re J.H.*, 9th Dist. Summit No. 27528, 2015-Ohio-4471, ¶ 21. Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d. 386, 387. In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id.* In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the

-11-

factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387.

{¶29} In this case, after the State rested, T.L. called four witnesses on his behalf. The first witness was Royal Vines, T.L.'s mother. Vines testified that T.L. had been in trouble previously for petty theft and marijuana possession. Vines testified that during the summer that the incident occurred T.L. spent a lot of time at his friend Z.W.'s residence. Vines testified that T.L. went there every day. Vines testified that on the date of the alleged incident she called T.L. and he stated that he was at Z.W.'s residence playing a game. Vines testified that T.L. told her he would be back by his probation-mandated curfew of 10 p.m. Vines testified that T.L. was home before his curfew.

{¶30} In addition, Vines testified that she believed T.L. had the blonde streak cut out of his hair prior to August 18, 2014, when T.L. had a court date, which would have been the day before this alleged incident. Vines testified that she could not recall exactly when it had been cut.

{¶31} T.L. next called Z.W. to testify on his behalf. Z.W. testified that he had been friends with T.L. since middle school. Z.W. testified that during the summer of 2014 T.L. was over at Z.W.'s house every day of the week. Z.W. testified that on the date of the alleged incident T.L. came to his house in the morning and they played a video game all day until T.L.'s friend N.W. picked T.L.

up to take him home at approximately 9:30 or 10 p.m. Z.W. testified that he and T.L. did not leave that day other than to possibly go to a nearby mini-mart. In addition, Z.W. testified that he believed T.L. had his hair cut in June while Z.W. was in Tennessee and that the blonde streak in T.L.'s hair was gone by the middle of June.

{¶32} On cross-examination Z.W. was asked how he remembered the date of the alleged robbery specifically given that he was with T.L. nearly every day of the summer. Z.W. testified that he remembered the date because while he and T.L. were still together that evening T.L. got a text message from an unknown phone number asking T.L. if he had robbed someone. Z.W. testified that there was nothing else about the date that was particularly significant.

{¶33} T.L. next called N.W. who testified that she was friends with T.L. and that she saw him all through the summer of 2014. N.W. testified that T.L. was usually at Z.W.'s residence if he was not playing basketball at the park. N.W. testified that she would often give rides to T.L. N.W. testified that on the date of the alleged incident she gave T.L. a ride from Z.W.'s house back to T.L.'s residence at approximately 8-8:30 p.m. N.W. testified that she remembered the date because it was the date of her niece's birthday party.

{¶34} As his last witness T.L. called Deputy Rodney Hefner, an officer at the Juvenile Detention Center. Deputy Hefner testified that he recalled T.L.

having a blonde streak in his hair. Deputy Hefner testified that he thought T.L. got his hair cut, and the blonde streak removed, sometime around August of 2014, though he could not remember specifically when.

{¶35} After Deputy Hefner's testimony was concluded, T.L. rested his case. The trial court took the matter under advisement and later issued a written decision on the matter. In its decision, the trial court summarized the pertinent testimony and specifically found T.L.'s alibi witness, Z.W., less credible than the victim, K.W. The trial court reasoned that Z.W.'s recollection of the specific date was questionable.

> **When asked why he recalled that date in particular, [Z.W.] testified that on that date the Child had received a text message from a person not identified by name inquiring about whether the Child had robbed someone. Inasmuch as the robbery had occurred at around 7:00 P.M., the phone call would have to have been made between 7:00 P.M. and around 9:00 P.M. At that point, there had been no identification of any suspect, and no real investigation of the incident. There is no reason that such a phone call would have to have been made on the specific date of the incident. In the days following the incident rather than within two hours after the incident.** [sic] **Given that that text message was the sole factor [Z.W.] identified to pinpoint the date and time, the Court is not convinced that he accurately accounts for the Child's whereabouts at the time of the commission of the offense.**

(Doc. No. 39). The trial court went on to find K.W. credible, and find beyond a reasonable doubt that T.L. was delinquent by means of committing Robbery.

{¶36} T.L. now argues on appeal that the State had not proven its case beyond a reasonable doubt despite the trial court's finding to the contrary. T.L. contends that K.W.'s identification was less credible than Z.W.'s purported alibi.

{¶37} Contrary to T.L.'s arguments, the trial court's skepticism of Z.W.'s credibility as to the purported alibi was supported by the record. First, T.L. filed multiple alibis in this case, initially indicating that he was in Toledo at the time of the alleged incident and later stating that he was with Z.W.[4] Second, Z.W. testified that he only remembered the date of the incident based on a text message T.L. had received and showed him asking if T.L. had robbed someone. Z.W. contended that the text message was on the night of the incident sometime between when the incident would have happened, approximately 7 p.m., and when T.L. left Z.W.'s residence, approximately 8:30-9:30 p.m. At that time K.W. and the police did not know who T.L. was and had not investigated the case.

{¶38} Moreover, we would note that determining credibility is well within the province of the trier-of-fact, which was able to see and hear the testimony for itself.

{¶39} Regardless, at trial and in the photo lineup K.W. clearly and unequivocally identified T.L. as the person who robbed him. The trial court found

---

[4] While we do not rely on it as evidence, we would note that in T.L.'s second notice of Alibi he claimed to be at Z.W.'s residence until 7:30 p.m., then he claimed to be with N.W. from 7:30 p.m. to 11:00 p.m., and finally he claimed that N.W. drove him home at approximately 11:00 p.m. (Doc. No. 23). There were multiple discrepancies with this timeline and the testimony that was presented at trial.

K.W.'s statements credible and we cannot find that the trial court clearly lost its way or created a manifest miscarriage of justice in doing so. Therefore we cannot find that T.L.'s adjudication was against the manifest weight of the evidence. T.L.'s second assignment of error is thus overruled.

*Third Assignment of Error*

**{¶40}** In T.L.'s third assignment of error he argues that he received ineffective assistance of trial counsel. Specifically he contends that his trial counsel was ineffective for failing to file a suppression motion seeking to suppress K.W.'s identification of T.L. in the photo lineup.

**{¶41}** An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Id.* at paragraph three of the syllabus.

**{¶42}** Under this assignment of error T.L. claims that his trial counsel was deficient for failing to file a suppression motion seeking to suppress the results of K.W. identifying T.L. by photo array. T.L. further argues, in a single sentence,

that his counsel was deficient for failing to employ or request the assistance of experts in eyewitness identification.

{¶43} T.L. thus asserts two arguments on appeal claiming his counsel was deficient; however, he does not support them with *any* claims that filing any such suppression motion or employing any such expert witnesses would have altered the outcome of the trial. He makes no claims that any suppression motion would have even been successful if filed and there is no indication that there was any valid legal reason why it may have been sustained. In addition, there is no indication as to what testimony any expert witness could have provided that may have altered the outcome of this trial. Similarly T.L. cites no case authority to support his bald factual claims.

{¶44} There is simply no showing in this case, and no real argument being made *at all* that there was any actual issue with the photo array identification. Similarly there is simply no showing in this case that any expert witness's testimony would have altered the outcome of this case. Thus we cannot find that T.L. has demonstrated that his trial counsel was deficient, or that even if his trial counsel was somehow deficient there was any resulting prejudice. Therefore, T.L.'s third assignment of error is overruled.

{¶45} Having found no error prejudicial to T.L. in the particulars assigned the judgment of the Allen County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**ROGERS and WILLAMOWSKI, J.J., concur.**

**/jlr**