OPINION
{¶ 1} Defendant-appellant, Donald W. Day, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of robbery in violation of R.C. 2911.02(A)(3), arising out of the March 2, 2002 robbery of Felecia Price and Shanette Brewer.
 {¶ 2} Pursuant to an indictment filed March 11, 2002, defendant was charged with two counts of aggravated robbery in violation of R.C.2911.01(A)(1) (Counts 1 and 4), two counts of robbery in violation of R.C. 2911.02(A)(1) and/or (A)(2) (Counts 2 and 5), two counts of robbery in violation of R.C. 2911.02(A)(3) (Counts 3 and 6), and one count of carrying concealed weapons in violation of R.C. 2923.12 (Count 7). The aggravated robbery and robbery counts included firearm specifications under both R.C. 2941.141 and 2941.145.
 {¶ 3} In September 2003, a jury acquitted defendant of carrying concealed weapons. The jury could not reach a verdict on the remaining counts, and the trial court declared a mistrial on those counts. Following a January 2004 retrial, a jury found defendant guilty of robbery as charged in Counts 3 and 6, but not guilty of the accompanying firearm specifications. The jury further found defendant not guilty of the remaining counts. The trial court imposed a sentence of two years on each of the robbery counts, to be served concurrently, and suspended the sentence for time served. Defendant now appeals, advancing a single assignment of error:
The Jury Verdicts as to the two counts of Robbery are against the Manifest Weight of the evidence.
 {¶ 4} Felecia Price testified that in the early morning hours of March 2, 2002, she and her friend, Shanette Brewer, drove to the C S Lounge for a late dinner after celebrating Shanette's birthday. As Felecia parked the car, both women noticed a man walking across a nearby field toward the parking lot. Upon reaching the parking lot, the man approached the car, opened the passenger door, leaned into the car, pointed a gun at the women, and demanded all of their possessions. The women gave the man their purses, checkbooks, cash, credit cards and cell phones. The man also took birthday money that was pinned to Shanette's blouse. According to Felecia, the man then walked to a car that was parked behind her and entered on the driver's side. A man wearing a black leather jacket was sitting in the passenger seat. The men then drove away.
 {¶ 5} Shanette's testimony differed slightly from Felecia's as to what transpired immediately after the robbery. According to Shanette, the man who robbed them walked beside the car and kept his hand on the passenger door until Felecia exited the parking lot; he then walked away. Shanette did not see the man get into a car, nor did she see a second person in the vicinity.
 {¶ 6} Felecia and Shanette both testified that after the robbery, they drove to a nearby gas station and asked an employee to call the police. Two Columbus police officers, Brett Bodell and Jack Morris, responded to the call. Both women were upset and shaken by the robbery. Because it was cold outside and the women were not wearing coats, the officers interviewed them in the back of a paddy wagon. The women provided similar descriptions of the robber — African-American male with facial hair, 27 to 30 years old, approximately 6'1" or 6'2" tall, weighing between 200 and 210 pounds, dressed in a black leather jacket, light-colored sweatshirt, light-colored toboggan hat, and dark pants. Both women told the police they were certain they could identify the person who robbed them. After the interview, the women went to Shanette's grandmother's house.
 {¶ 7} Because Felecia told the officers that the robber fled on foot after the robbery, the officers went to the scene to search for items the robber may have discarded. When no property was found, the officers called Felecia, who then reported that the robber left the scene in an large, older model yellow car with a light-colored top.
 {¶ 8} Approximately two and one-half hours later, Officers Bodell and Morris observed a car matching that description a few blocks from the robbery site. The passenger of the car matched the description of the robber provided by the victims. After the driver committed several traffic violations, the officers initiated a traffic stop. As the officers approached the car, they noticed the passenger remove a light-colored toboggan hat from his head and attempt to place it in the glove compartment. They also noticed the driver reaching between his legs as if to place something on the front seat.
 {¶ 9} When the driver did not produce a valid driver's license, the officers placed him in the back of the paddy wagon. The officers then called the victims' cell phone numbers and heard ringing inside the suspects' vehicle. Thereafter, the officers placed the passenger in the back of the paddy wagon. The suspects were patted down but not handcuffed. Shortly thereafter, Officer Morris noticed the suspects moving around in the back of the paddy wagon near the area where he and Officer Bodell kept their riot gear bags. Officer Morris retrieved his riot gear bag and found a loaded gun inside; he removed the gun from the bag and secured it. Pursuant to an inventory of the suspects' vehicle, the officers recovered the victims' cell phones, a light-colored toboggan hat and a hooded sweatshirt.
 {¶ 10} Thereafter, the officers contacted Felecia, told her they had detained two possible suspects, and requested that she and Shanette meet them at the scene of the traffic stop. Felecia called Shanette and relayed the information to her. When the victims arrived, another police officer, Scott Leroy, explained the identification procedure to them.
 {¶ 11} During the identification process, the suspects were held in separate police vehicles — defendant in a paddy wagon and the second suspect in a police cruiser — and were separately presented to the victims from the separate vehicles. Shanette testified she identified the person presented from the paddy wagon as the robber; she could not identify the person brought out of the cruiser. Without specifying which suspect was presented from which vehicle, Felecia testified that she identified one of the individuals as the robber and the other individual as the person she observed in the passenger seat of the yellow car after the robbery.
 {¶ 12} Officer Leroy testified that Felecia identified defendant as the driver of the yellow car and the other suspect as the robber. Officer Leroy further testified that Felecia stated she believed that the men had switched clothing. Officer Leroy also testified that Shanette identified defendant as the robber, but did not recognize the second suspect.
 {¶ 13} In his single assignment of error, defendant contends his convictions are against the manifest weight of the evidence. In particular, defendant argues that the victims' inconsistent and conflicting identifications of the robber at the showup rendered both identifications so unreliable as to cast serious doubt on whether defendant committed the offense.
 {¶ 14} In State v. Thompkins (1997), 78 Ohio St.3d 380, the Supreme Court of Ohio set forth the following standard for a court addressing a criminal conviction based upon a claim that the verdict is contrary to the manifest weight of the evidence:
* * * "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} When reviewing a conviction on manifest weight grounds, an appellate court does not construe the evidence most strongly in favor of the state. Rather, a reviewing court must engage in a "`limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt.'" State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 19, quoting State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. An appellate court will not reverse a jury verdict on manifest weight grounds unless all three appellate judges concur. Thompkins, supra, at paragraph four of the syllabus.
 {¶ 16} Here, defendant has failed to satisfy this heavy burden. The jury heard Officer Leroy's testimony that at the showup, Felecia identified the second suspect as the robber and Shanette identified defendant as the robber. However, the jury also heard both victims' unequivocal in-court identifications of defendant as the robber. Felecia testified she saw defendant clearly as he approached her car, as her headlights were on. She further testified that the interior light of her car was illuminated when defendant opened the door; thus, she saw defendant's face clearly when he leaned into the car to remove the money from Shanette's blouse. Shanette also testified that she got a good look at defendant as he approached the car because the car was parked under a street light. She further testified that she looked directly at defendant when he opened the car door and that his face was inches from hers when he held the gun to her head. In addition, Felecia positively identified Exhibit 2, the toboggan hat defendant attempted to conceal from the police, as the one worn by defendant during the robbery.
 {¶ 17} "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A defendant is not entitled to reversal of a conviction on manifest weight of the evidence grounds merely because inconsistent testimony was heard at trial. Raver, supra, at ¶ 21. "`While the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render a conviction against the manifest weight * * * of the evidence.'" Id., quoting State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. A jury, as finder of fact, is free to believe all, part, or none of the testimony of the witnesses who appear before it. State v. Wiley, Franklin App. No. 03AP-340, 2004-Ohio-1008, at ¶ 48.
 {¶ 18} Given the circumstances here, evidence regarding the victims' conflicting pre-trial identifications was the jury's to resolve. "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Statev. Coleman (Nov. 21, 2000), Franklin App. No. 99AP-1387 (citing Manson
v. Brathwaite [1977], 432 U.S. 98, 116, 97 S.Ct. 2243). Further, defendant's suggestion on appeal, that the verdicts were based primarily upon the pretrial identifications, is purely speculative. The jury may well have discounted the testimony regarding the show-up identifications and based its verdicts on the victims' incourt identifications of defendant as the robber.
 {¶ 19} In short, the jury had the opportunity to hear the testimony of all the witnesses who appeared before it and evaluate their credibility. An appellate court may not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is manifestly clear that the factfinder lost its way. State v. Green, Franklin App. No. 03AP-813, 2004-Ohio-3697, at ¶ 25. On the record before us, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in arriving at its verdicts. To the contrary, we conclude that the weight of the evidence supports the convictions.
 {¶ 20} Based upon the foregoing, defendant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed. We note, however, that the trial court's sentencing entry indicates that defendant was found guilty of robbery as charged in Counts 1 and 6 of the indictment. As stated previously, defendant was found guilty of robbery as charged in Counts 3 and 6 of the indictment. The sentencing entry also fails to state that defendant was found not guilty of Count 5. Accordingly, this cause is remanded to the Franklin County Common Pleas Court for its entry of an order nunc pro tunc correcting the March 5, 2004 sentencing entry.
Judgment affirmed; cause remanded for nunc pro tunc sentencingentry.
Petree and French, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.