[Cite as *In re A.F.*, 2020-Ohio-4622.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

IN RE:

                                            CASE NO. 4-20-06

     A.F.,

ALLEGED DELINQUENT CHILD.          **O P I N I O N**

Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 34037

**Judgment Affirmed**

**Date of Decision:  September 28, 2020**

APPEARANCES:

     *Abigail Christopher* **for Appellant**

     *Chelsea R. Cereghin* **for Appellee**

**SHAW, P.J.**

{¶1} Delinquent Child, A.F., appeals the March 12, 2020 judgment of the Defiance County Court of Common Pleas, Juvenile Division, adjudicating him delinquent of one count of rape in violation of R.C. 2907.02(A)(2) and committing him to the legal care and custody of the Department of Youth Services for a minimum of one year. On appeal, A.F. argues that the trial court's adjudication of him as a delinquent child was against the manifest weight of the evidence. A.F. further argues that the trial court erred in admitting into evidence, as Exhibit A, a Snapchat photograph for the prosecution. A.F. also contends that the trial court was not authorized by statute to commit him both to the legal care and custody of the Department of Youth Services and place him on a term of probation for the same offense. Finally, A.F. argues that he received ineffective assistance from his trial counsel.

*Procedural History*

{¶2} On August 16, 2019, Detective Patrolman Kevin Benbow with the Defiance Police Department filed a complaint alleging that A.F. committed the offense of rape, in violation of R.C. 2907.02(A)(2),(B), a felony of the first degree if committed by an adult. Specifically, the complaint alleged that on June 5, 2018, fifteen-year-old A.F. engaged in sexual conduct with the victim, fourteen-year-old L.S., by purposely compelling L.S. to submit by force or threat of force. A.F.

subsequently appeared before the trial court and answered "Not True" to the allegation contained in the complaint.

{¶3} On January 21, 2020, the trial court conducted an adjudication hearing where it heard testimony from several individuals and admitted into evidence exhibits presented in support of each party's respective position.

{¶4} On February 11, 2020, the trial court issued a judgment entry finding A.F. to be a delinquent child by reason of rape and ordered a pre-dispositional report to be prepared.

{¶5} On March 12, 2020, A.F. appeared before the trial court for disposition. The trial court committed A.F. to the legal care and custody of the Department of Youth Services ("DYS") for a minimum period of one year and also placed him on a period of probation until A.F. attains the age of twenty-one.

{¶6} A.F. now appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. I**

**THE PHOTOGRAPH ADMITTED TO EVIDENCE FROM L.S.'S SNAPCHAT WAS NOT PROPERLY AUTHENTICATED, AND THUS, IMPROPERLY ADMITTED TO EVIDENCE. EVID.R. 901.**

**ASSIGNMENT OF ERROR NO. II**

**THE GOVERNMENT'S CASE CONTAINED INCONSISTENT TESTIMONY AND PHYSICAL EVIDENCE THAT DID NOT MATCH THE TESTIMONY PRESENTED, THUS A.F.'S**

**ADJUDICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

**ASSIGNMENT OF ERROR NO. III**

**THE LOWER COURT EXCEEDED ITS STATUTORY AUTHORITY AND UNDERMINED THE EXECUTIVE BRANCH WHEN IT COMMITTED A.F. TO DYS AND PLACED HIM ON COURT SUPERVISION FOR THE SAME CHARGE. R.C. 2152.22(A); FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; ARTICLE I, SECTION 16 OHIO CONSTITUTION.**

**ASSIGNMENT OF ERROR NO. IV**

**A.F. WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL. SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.**

{¶7} For clarity and ease of discussion we elect to address the assignments of error out of order.

*Second Assignment of Error*

{¶8} In his second assignment of error, A.F. challenges the trial court's adjudication of him as a delinquent child. Specifically, A.F. claims that the trial court's delinquency adjudication for the offense of forcible rape was not supported by the manifest weight of the evidence.

*Standard of Review*

{¶9} In the juvenile context we employ the same standard of review applicable to adult criminal convictions claimed to be against the manifest weight of the evidence. *In re T.L*, 3d Dist. Allen No. 1-15-24, 2016-Ohio-252, ¶ 28. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

*Evidence Adduced at the Adjudication Hearing*

{¶10} The State's primary witness to provide evidence was L.S., the victim in this case, who was sixteen-years-old at the time of the adjudication hearing and in the tenth grade. L.S. identified A.F. in the courtroom and stated that she had known A.F. since her eighth grade year. She explained that A.F. is one-year older than her and in the grade above her in school. L.S. recalled that she and A.F. had dated in February of 2018. She stated that the relationship was short-lived, with her "hanging out" at his house on two occasions and at her house on one. According to L.S., the two parted ways amicably and they did not interact much after February 2018.

{¶11} L.S. stated that on the evening of June 4, 2018, A.F. sent her a Snapchat message asking if she wanted to "hang out" at his house the next day.[1] (Doc. No. 75 at 14). At the time, L.S. was fourteen-years-old and A.F. was fifteen-years old. L.S. recalled getting permission from her father to go to A.F.'s house after volleyball camp on the morning of June, 5, 2018. She recalled arriving to A.F.'s house at approximately 12:30-1:00 p.m. later that day. According to L.S., she and A.F. "hung out" on the couch in the living room and watched a movie. She remembered that A.F.'s mother was at home during this time.

{¶12} L.S. recalled that she and A.F. were laying on the couch on their right sides with L.S. laying in front of A.F. According to L.S., A.F.'s right arm was situated underneath her torso and wrapped around her collar bone area, and his left arm was wrapped around her waist. L.S. testified that A.F. attempted to pull down her shorts, but she told him "no" multiple times. (Doc. No. 75 at 17). L.S. testified that A.F. persisted and eventually pulled her shorts down and "raped" her by penetrating her vagina with his penis. (Id.). L.S. stated that she felt restricted by A.F.'s hold on her body and also felt as if she could not escape by rolling off the couch because a table was in front of the couch. L.S. recalled the sexual assault lasted approximately five minutes.

---

[1] Snapchat is a social media platform that allows participants to send pictures and text messages to each other. *See State v. Hunter*, 11th Dist. Lake No. 2017-L-081, 2018-Ohio-5325, ¶ 2.

{¶13} L.S. stated that after the assault she went to the bathroom and communicated with one of her friends who had sent her a message inquiring where she was because they had planned to get together that day. At that point, L.S. took a picture of herself in a mirror at A.F.'s home and sent it via Snapchat to her friend. L.S. stated that prior to this incident she had never engaged in sexual conduct with A.F. L.S. recalled feeling scared and contacted her mother to see when she needed to be home. L.S. stated that she began to cry in the bathroom but eventually returned to the couch. She recalled that neither she nor A.F. spoke to one another, and that they sat on opposite ends of the couch until L.S.'s mother arrived to take her home.

{¶14} L.S. recalled getting into the back seat of her mother's car when her mother came to A.F.'s house to pick her up. L.S. stated that she curled up into the fetal position in the back seat and began to cry. Once she returned home, L.S. entered her bedroom and continued to cry for a period of time. She explained that she did not say anything to her parents about the incident because she was worried that they would be mad or disappointed in her. L.S. stated later that evening she went to her friend's house, the same one she had Snapchatted with earlier that day and to whom she had sent the picture of herself while at A.F.'s house. L.S. told her friend about the assault the next day. L.S. explained on cross-examination that she did not realize until she spoke with her friend that she had been raped. She further acknowledged that she did not report the incident until March 18, 2019, when she

relayed the details of the sexual assault to a guidance counselor at school. The guidance counselor reported the incident to the school resource officer, who in turn contacted the Defiance Police Department.

{¶15} J.S., L.S.'s mother, also testified for the prosecution and recalled picking up L.S. from A.F.'s house on June 5, 2018, sometime before 6:00 p.m. She remembered noticing that L.S. was upset while riding in the car and that L.S. immediately went to her bedroom upon arriving home. She regretfully admitted that she did not think much of L.S.'s behavior at the time because "[w]hen [L.S.] is upset like that, she does not really talk, and she tends to get a little bit moody." (Doc. No. 75 at 90). J.S. stated that she has noticed a change in L.S. from that day forward; specifically, that "[L.S.] is not as much of an outgoing person as what she was." (Id. at 97).

{¶16} Detective Patrolman Kevin Benbow of the Defiance Police Department also provided testimony for the prosecution. Det. Benbow recalled that he began his investigation of the case after receiving the report from the guidance counselor and school resource officer. He interviewed L.S. regarding the incident. He described her as becoming very upset and crying when she spoke about the details of the rape. Det. Benbow reviewed the Snapchat picture from L.S.'s phone, which L.S. claimed to have taken on June 5, 2018, while at A.F.'s house after the incident occurred. Det. Benbow took a photograph of the Snapchat picture on L.S.'s

phone. This photograph was used and admitted as Exhibit A for the prosecution at the adjudication hearing. The photograph was timestamped and dated "June 5, 2018, 5:32 p.m." (Ex. A).

{¶17} Det. Benbow also collected a written statement from L.S. and a diagram L.S. drew of A.F.'s home. He interviewed J.S., L.S.'s mother, and retrieved GPS data from J.S.'s phone that indicated J.S. was in the vicinity of A.F.'s house on June 5, 2018. (Ex. C). Det. Benbow also took a photograph of J.S.'s Facebook Messenger conversation between J.S. and L.S. on June 5, 2018, during which L.S. informed J.S. that she was at A.F.'s house and asked what time she needed to be home. (Ex. B). This exhibit indicated that the messages between L.S. and her mother began at approximately 3:09 p.m. on June 5, 2018. Det. Benbow also interviewed other individuals who claimed to have overheard A.F. bragging about engaging in sexual conduct with L.S. in a conversation with several other students at a school cafeteria table.

{¶18} For his part, A.F. testified and denied that he had any contact with L.S. on June 5, 2018, let alone engaging in sexual intercourse with her on that date or at any other time. A.F. acknowledged that he and L.S. had dated for a short period of time in February 2018, but maintained that he had not had any significant contact with her since then except for seeing her in the hallways at school on occasion. He denied that he had reached out to her via Snapchat on June 4, 2018, as L.S. claimed.

He explained that L.S. had been to his home in February 2018 and maintained that Exhibit A, the Snapchat picture of L.S at his home, must have been taken then. A.F. also asserted that the time and date stamp on Exhibit A had been modified.

{¶19} A.F. testified that he was not home on the afternoon of June 5, 2018. He explained that his mother had purchased a vehicle from her uncle, W.J., the day before, on June 4, 2018, and that they were both at W.J.'s house in Archbold working on the vehicle to make it operable. A.F. submitted as an exhibit a photocopy of a receipt from Napa Auto Parts in Archbold dated June 5, 2018 at 4:52 p.m. evidencing the purchase of a part for the vehicle. (Ex. 8). A.F. testified that he and his mother bought the part from the store that afternoon. A.F. further testified that W.J. picked up both him and his mother on the afternoons of June 4, June 5, and June 6, 2018, to work on the vehicle in Archbold, which was approximately a twenty-five minute drive from their home in Defiance.

{¶20} A.F. stated that on the evening of June 6, 2018, they were able to make the vehicle operable and drove it from Archbold to Defiance. He explained that on their way home they were pulled over by law enforcement because there were no license plates on the vehicle. A.F. recalled explaining to the law enforcement officer effectuating the traffic stop that they intended to register the vehicle the next day. A.F. submitted as an exhibit the registration of the vehicle with the State Bureau of Motor Vehicles indicating the vehicle was registered on June 7, 2018. (Ex. 10).

A.F. presented the testimony of his mother, C.F., and of his mother's uncle, W.J., who both testified that A.F. was in Archbold working on the vehicle on June 5, 2018, during the time L.S. claimed the rape occurred at A.F.'s house.

*The Trial Court's Decision*

**{¶21}** In its February 11, 2020 Judgment Entry, the trial court found that "the State has presented proof beyond a reasonable doubt that the Complaint filed herein is True, and therefore finds the child, [A.F.], to be a Delinquent Child." (Doc. No. 53 at 2). In regard to witness credibility, the trial court specifically found:

> **The Court also finds that there are numerous discrepancies and inconsistencies surrounding the facts and circumstances of this case, but that the victim's description of the act committed is and has been, substantially consistent and credible throughout.**
>
> **This Court is the trier of fact, and as such is also the sole judge of the credibility of the witnesses. Although there are obvious inconsistencies in the various witnesses' testimony in the present case, *the Court finds that the testimony of [L.S.] was the most credible of all the witnesses who appeared before the Court*. She clearly described, in an emotional fashion, the act of sexual intercourse which she stated she was purposely compelled to submit to by force or threat of force. In examining the inaccuracies which were clearly pointed out in the hearing, the Court does not find those to be suspect or unusual in a case such as this where the act is reported and investigated substantially later in time than when the act occurred, and the victim of the act is a child of teenage years.**

(Doc. No. 53 at 2) (emphasis added).

*Analysis*

**{¶22}** On appeal, A.F. argues that the trial court's delinquency adjudication was against the manifest weight of the evidence. Specifically, A.F. points to L.S.'s description of the sexual assault, which he characterizes in his brief as "vague," and to inconsistencies between L.S.'s written statement and statements to law enforcement with her testimony at the adjudication hearing.

**{¶23}** At the outset, we conclude that the record supports the trial court's finding that L.S. was consistent in her description of how the sexual assault occurred. At the adjudication hearing, she clearly indicated that the rape consisted of vaginal intercourse, with A.F.'s penis penetrating her vagina, and her testimony was unwavering in describing the details of how the assault took place. (Tr. at 17). In regard to factual inconsistencies, the record reflects A.F.'s trial counsel impeached L.S. with her prior written statement which indicated that the rape occurred on June 4, 2018, as opposed to June 5, 2018.

**{¶24}** Defense counsel also highlighted other inconsistencies with L.S.'s prior statements regarding the details of the day in question with her testimony at the adjudication hearing, including that she initially stated she walked to A.F.'s house, but then testified that her father drove her there; she initially stated that the assault occurred in A.F.'s bedroom, but then testified that it happened in the living room. A.F. further argues that L.S. also provided imprecise testimony regarding the

time she arrived to A.F.'s house, the time she took the Snapchat photo after the assault, the time her mother picked her up, and whether the vehicle A.F. claimed to be working on that day was parked in the driveway at A.F.'s home.

{¶25} As noted by the trial court, the initial report of the incident did not occur until nine months after the assault, and the adjudication hearing occurred over a year and half later. Nevertheless, L.S. consistently testified that the relevant events occurred within a timeframe of between 12:30 p.m. and 6:00 p.m. on June 5, 2018. The Snapchat photo L.S. took of herself at A.F.'s home was timestamped and dated "June 5, 2018, 5:32 p.m." (Ex. A). Testimony from Det. Benbow and A.F. confirmed that this photo was taken at A.F.'s home. In addition, the text messages between L.S. and her mother demonstrate that they had a conversation on June 5, 2018 at 3:09 p.m., and in these text messages L.S. informed her mother she was at A.F.'s house and asked what time she needed to be home, to which her mother responded "the latest 6." (Ex. B). L.S.'s mother testified that she picked up L.S. from A.F.'s house sometime before 6:00 p.m. on June 5, 2018. Det. Benbow further testified that he retrieved GPS data from L.S.'s mother's phone which indicated that she was in the vicinity of A.F.'s house on that day. (Ex. C). All of this evidence contradicted the testimony of A.F. and his mother that L.S. was not at their house on the afternoon on June 5, 2018, which was the critical point of contention between the parties in this case.

{¶26} As previously discussed, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The record supports the trial court's conclusion that L.S.'s testimony regarding the rape remained consistent, and the trial court as the finder of fact is free to believe all, part, or none of the testimony of each witness. Moreover, defense counsel competently cross-examined L.S. regarding certain aspects of her testimony that appeared to have changed over time. Defense counsel also casted doubt upon the reliability of the time and date stamp on the Snapchat photograph placing L.S. at A.F.'s house on June 5, 2018, at 5:32 p.m. Defense counsel further attempted to establish that Det. Benbow failed to examine whether the metadata from the Snapchat photograph shown in Exhibit A had been modified and proffered testimony suggesting that the time and date stamp on the Snapchat photograph could have been manipulated by L.S.[2]

{¶27} However, "[a] defendant is not entitled to reversal of a conviction on manifest weight of the evidence grounds merely because inconsistent testimony was heard at trial." *State v. Day*, 10th Dist. Franklin No. 04AP-332, 2005-Ohio-359, ¶ 17. In the case *sub judice*, the trial court was best able to view all of the witnesses

---

[2] Metadata is "[s]econdary data that organize, manage, and facilitate the use and understanding of primary data." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St. 3d 139, 145, 2012-Ohio-4246, ¶ 19, citing BLACK'S LAW DICTIONARY 1080 (9th Ed.2009). In other words, it is "[i]nformation describing the history, tracking, or management of an electronic file * * *." *Townsend v. Ohio Dep't of Transp.*, 10th Dist. Franklin No. 11AP–672, 2012-Ohio-2945, ¶ 21.

Case No. 4-20-06

and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony. *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). At the disposition hearing, the trial court stated the following about the evidence at the adjudication hearing:

> **I would acknowledge that this case could not be anymore [sic] diametrically [opposed] in the two positions here. We have a young lady that says she was forcibly raped by a young man and the young man says he was not even there. It does not get anymore in opposite positions as that. My job is to listen to that evidence, and I have to determine what is credible and what is not. I found this young lady to be very credible. There were a lot of things that [defense counsel] pointed out during the course of this trial that were confusions and things that occurred that a good lawyer would point out, which he did, and he did well. The one consistent part of this was her version of being forcibly raped. That is an act that cannot be tolerated. Not now, not ever. It cannot be explained away. It cannot be excused.**

(Doc. No. 76 at 16-17).

{¶28} As acknowledged by the trial court and the parties in their briefs, this case came down to witness credibility. The trial court clearly believed L.S.'s testimony that A.F. forcibly raped her at his home on June 5, 2018. Moreover, L.S.'s testimony, along with that of her mother and the exhibits demonstrating the contents of L.S. and her mother's phone, all supported L.S.'s version that she was at A.F.'s house on the afternoon of June 5, 2018.

{¶29} In sum, our review of the record reveals that the trial court did not clearly lose its way when it found the State's evidence persuasive, and therefore did

-15-

not create a manifest miscarriage of justice. On appeal, A.F. presents no compelling reason for this Court to reject the trial court's determination on witness credibility. Accordingly, we conclude that A.F.'s adjudication as a delinquent child by reason of rape was not against the manifest weight of the evidence and as such the second assignment of error is overruled.

*First Assignment of Error*

{¶30} In his first assignment of error, A.F. argues that the trial court erred when it admitted Exhibit A the Snapchat photograph from L.S.'s phone into evidence. Specifically, A.F. claims that the photograph was not properly authenticated at the adjudication hearing. On appeal, A.F. does not dispute that the photograph depicts L.S. at his home, rather he argues that the photo was not taken on June 5, 2018, as indicated by the time and date stamp on the photo and L.S.'s testimony at the adjudication hearing.

*Standard of Review*

{¶31} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). Pursuant to Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is not admissible, however, "if its probative value is substantially outweighed by the

danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "In a bench trial, the trial court is presumed to have considered only admissible evidence unless the record indicates otherwise." *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, ¶ 58 (8th Dist.). *See also State v. White*, 15 Ohio St.2d 146, 151 (1968) (a reviewing court will "indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary").

{¶32} According to Evid.R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." An example of authentication or identification that conforms to the requirements of the rule includes testimony of a witness with knowledge that a matter is what it is claimed to be. *See* Evid.R. 901(B)(1); *State v. Schentur*, 8th Dist. Cuyahoga No. 108448, 2020-Ohio-1603, ¶ 31. Moreover, the threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, and "does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be." *State v. Smoot*, 2d Dist. Montgomery No. 26297, 2015-Ohio-2717, ¶ 58, citing *State v. Easter*, 75 Ohio App.3d 22, 25 (4th Dist. 1991)."

**{¶33}** Ohio courts have held that a "photograph is admissible if it is shown to be an accurate representation of what it purports to represent. It is unnecessary to show who took the photograph or when it was taken, provided there is testimony that the photograph is a fair and accurate representation of what it represents." *State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, ¶ 30 (10th Dist.).

**{¶34}** Ohio courts have also held that the determination of admissibility and authentication of social media evidence is "based on whether there was sufficient evidence of authenticity for a reasonable [trier of fact] to conclude that the evidence was authentic." *State v. Gibson*, 6th Dist. Lucas Nos. L-13-1222 and L-13-1223, 2015-Ohio-1679, ¶ 41.

> **The hurdle the proponent of the document must overcome in order to properly authenticate a document is not great. * * * Thus, the purpose behind authentication is to connect the particular piece of evidence sought to be introduced to the facts in the case by giving some indication the evidence is relevant and reliable. The ultimate decision on the weight to be given to that piece of evidence is left to the trier of fact.**

*State v. Brown*, 151 Ohio App.3d 36, 2002-Ohio-5207, ¶ 33-35 (7th Dist.).

*Analysis*

**{¶35}** Here, L.S. testified that Exhibit A was a true and accurate depiction of the photograph that she took of herself at A.F.'s house on June 5, 2018 using Snapchat. She described the clothes she was wearing in the photograph, the

background and other contents of the photograph, and her reason for taking the photograph. L.S. further testified that she had not modified the image in any way. In support of L.S.'s testimony in this regard, Det. Benbow also testified regarding the photograph in Exhibit A. Specifically, he testified that he observed the Snapchat photograph on L.S.'s phone when he interviewed her during his investigation and that Exhibit A was a fair and accurate depiction of the image he saw on her phone.

{¶36} Despite, A.F.'s contentions on appeal, there was no evidence that the Snapchat photo had been modified, or that it was anything other than what it purported to be. Even assuming *arguendo* that Exhibit A was improperly admitted, the record reveals that there was other evidence presented by the State at the adjudication hearing which supported L.S.'s claims that she was at A.F.'s house on June 5, 2018, and therefore any error arising from the improper admission would be harmless. *See State v. Williams*, 6 Ohio St.3d 281, 290 (1983) ("Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt.").

{¶37} Accordingly, we conclude the record supports the trial court's finding that this evidence satisfied the relatively low burden of authentication under Evid.R. 901(A). We further conclude that the court did not abuse its discretion in admitting Exhibit A into evidence and A.F.'s first assigned error is overruled.

*Third Assignment of Error*

{¶38} In his third assignment of error, A.F. argues that the trial court abused its discretion by committing him to the legal care and custody of DYS and placing him on a term of probation for the same offense. Specifically, A.F. argues that the juvenile court lacked jurisdiction under R.C. 2152.22(A) to impose a term of probation after it committed him to the legal care and custody of DYS.

{¶39} This Court has recently addressed this precise issue and has rejected similar challenges articulated by A.F. on appeal. *See In re L.R.* 3d Dist. Defiance No. 4-19-19, 2020-Ohio-2990. In *In re L.R.*, we thoroughly analyzed the relevant statutes governing the juvenile court's dispositional authority in delinquency matters and concluded "that the statutes governing juvenile dispositions authorize a juvenile court to impose community-control sanctions in conjunction with an order of commitment and that those conjunctive dispositions are not in conflict." *Id*. at ¶ 19. Accordingly, for the same reasons expressed in *In re L.R.*, we conclude that the trial court did not err when it imposed a term of probation upon A.F. after it committed him to the legal care and custody of DYS as its disposition. Therefore, A.F.s third assignment of error is overruled.

*Fourth Assignment of Error*

{¶40} In his fourth assignment of error, A.F.'s claims that he received ineffective assistance from his trial counsel. Specifically, A.F. argues that his trial

counsel was ineffective when he failed to have the metadata from L.S.'s Snapchat photograph in Exhibit A analyzed by an expert. A.F. also claims his trial counsel was ineffective when he failed to object to the trial court's imposition of a DYS commitment and a term of probation as a disposition for the same offense.

*Standard of Review*

{¶41} To prove an allegation of ineffective assistance of counsel, A.F. must satisfy a two-prong test. First, A.F. must establish that his trial counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Second, A.F. must demonstrate that he was prejudiced by counsel's performance. *Strickland*, 466 U.S. at 687. To show that he has been prejudiced by counsel's deficient performance, A.F. must prove that, but for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶42} The failure to make either the deficiency or prejudice showing defeats a claim of ineffective assistance of counsel. *State v. Frye*, 10th Dist. Franklin Nos. 14AP-988, 14AP-989, 2015-Ohio-3012, ¶ 11, citing *Strickland*, 466 U.S. at 697. Thus, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground

-21-

of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland* at 697.

*Analysis*

**{¶43}** At the outset, having already determined in our resolution of the third assignment of error that the trial court was authorized to impose a term of probation upon A.F. after it committed him to the legal care and custody of DYS as its disposition, we find no merit to A.F.'s claim of ineffective assistance of counsel on this basis.

**{¶44}** A.F. also argues that trial counsel's performance was deficient for failing to review the metadata from the Snapchat photograph admitted as Exhibit A into evidence, or alternatively for failing to secure an expert to review the metadata or to provide testimony regarding how photographs on Snapchat can be manipulated or altered. The record establishes that A.F.'s trial counsel competently cross-examined Det. Benbow regarding whether the metadata from L.S.'s phone was reviewed. Det. Benbow admitted that he did not review the metadata associated with the Snapchat photo on L.S.'s phone.

**{¶45}** Moreover, the record indicates that trial counsel attempted to present testimony from one of the teenaged witnesses at trial to demonstrate that a Snapchat user can take an older picture, move the picture from the older file, and save it as today's date on the phone. The testimony would have further established that when

this is done the older date and time would have been removed and the picture would now indicate today's date or the new date saved. Ostensibly, this testimony was intended to support the inference that L.S. manipulated the date and time stamp on Snapchat photo depicted in Exhibit A. However, the prosecutor objected to the testimony and the trial court excluded it from evidence, but permitted trial counsel to proffer the witness's testimony on the record.

{¶46} In excluding the testimony, the trial court noted that L.S. had already demonstrated during her testimony how the date on Snapchat photographs can be altered in this manner by saving the file to the phone. However, L.S. explained that she accessed the picture she showed to Det. Benbow, the same one depicted in Exhibit A, directly from her Snapchat account, as opposed to pulling it from her phone files, and maintained that she could not modify the time and date stamp that appeared on the picture in Exhibit A because it came directly from her Snapchat account.

{¶47} The Supreme Court of Ohio has stated that "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993), citing *State v. Thompson*, 33 Ohio St.3d 1, 10-11 (1987). Here, A.F.'s argument on appeal that testimony from an expert would have changed the outcome of the case is purely speculative. In addition, as already discussed in the second assignment of error,

there was other evidence presented at the adjudication hearing corroborating L.S.'s testimony that she was at A.F.'s house on the afternoon of June 5, 2018.

{¶48} Based upon the record before us we cannot find that A.F. has demonstrated his trial counsel was ineffective or that any purported ineffectiveness was prejudicial to his case. Therefore, his fourth assignment of error is overruled.

{¶49} For all these reasons, the assignments of error are overruled and the judgment and disposition of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON and ZIMMERMAN, J.J., concur.**

**/jlr**