[Cite as *In re K.B.*, 2025-Ohio-4714.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

IN RE:

K.B.,

ADJUDICATED DELINQUENT
CHILD.

CASE NO. 11-25-05

OPINION AND
JUDGMENT ENTRY

Appeal from Paulding County Common Pleas Court
Juvenile Division
Trial Court No. 20242043

Judgment Affirmed

Date of Decision:  October 14, 2025

APPEARANCES:

*Terry L. Simson* for Appellant

*Joseph R. Burkard* for Appellee

**ZIMMERMAN, J.**

{¶1} Adjudicated delinquent child-appellant, K.B., appeals the December 2, 2024 judgment entry of disposition of the Paulding County Court of Common Pleas, Juvenile Division.  For the reasons that follow, we affirm.

{¶2} This case stems from the vandalism of the Paulding County Fairgrounds, where two juveniles, K.B. and K.S., admitted to spray painting the buildings and causing over $6,000 in damages.  On November 6, 2024, a complaint was filed against K.B. charging her with Count One of breaking and entering in violation of R.C. 2911.13(B), a felony of the fifth degree if committed by an adult, and Count Two of vandalism in violation of R.C. 2909.05(B)(2), a felony of the fifth degree if committed by an adult.[1]  On November 15, 2024, K.B. appeared and denied the charges in the complaint.

{¶3} The case proceeded to an adjudicatory hearing on February 21, 2025, where her case was joined with that of the other juvenile involved in the incident. The trial court found K.B. to be a delinquent child as alleged in the complaint.

{¶4} At the dispositional hearing on March 19, 2025, the trial court committed K.B. to the legal care and custody of the Ohio Department of Youth Services ("DYS") for a minimum period of six months (not to exceed K.B.'s 21st

---

[1] An amended complaint was filed on February 19, 2025.

birthday). This commitment was suspended, and K.B. was placed on community control for one year. As part of her community control, K.B. was ordered to serve ten consecutive weekends in detention, pay a minimum of $1,000 in restitution, and complete 150 hours of community service.

{¶5} K.B. filed her notice of appeal on March 21, 2025. She raises two assignments of error for our review.

### First Assignment of Error

**The Trial Court erred as the manifest weight of the evidence did not support a finding of delinquency.**

{¶6} In her first assignment of error, K.B. argues that her breaking and entering and vandalism adjudications are against the manifest weight of the evidence. K.B. specifically argues that her adjudications are against the manifest weight of the evidence because the trial court lost its way by relying on incredible evidence, namely a coerced confession that was the product of a flawed investigation.

*Standard of Review*

{¶7} The same legal standards for evaluating the weight and sufficiency of evidence apply in juvenile adjudications as in adult criminal cases. *In re G.F.*, 2024-Ohio-5366, ¶ 9 (3d Dist.). Thus, in determining whether a juvenile adjudication is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the

credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the [adjudication],' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶8} In this case, the trial court adjudicated K.B. delinquent for breaking and entering and vandalism. R.C. 2911.13 sets forth the offense of breaking and entering and provides, in its relevant part, that "[n]o person shall trespass on the land or premises of another, with purpose to commit a felony." R.C. 2911.13(B). The offense of vandalism is codified under R.C. 2909.05, which provides, in its relevant part, that "[n]o person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity." R.C. 2909.05(B)(2).

-4-

{¶9} However, K.B. does not dispute the evidence concerning the underlying elements of the offenses of which she was adjudicated delinquent. Rather, she disputes the weight of the evidence identifying her as the person who committed the offenses. Therefore, we will address only the identity element of the offenses. "'It is well settled that in order to support [an adjudication], the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *State v. Missler*, 2015-Ohio-1076, ¶ 13 (3d Dist.), quoting *State v. Johnson*, 2014-Ohio-1226, ¶ 27 (7th Dist.).

{¶10} At trial, the State offered the testimony of Chief Regina Weidenhamer ("Chief Weidenhamer") of the Paulding Police Department who investigated the vandalism at the Paulding County Fairgrounds. Chief Weidenhamer testified that her investigation led her to suspect K.B. and another juvenile, K.S. She interviewed both juveniles, and during these recorded interviews, both K.B. and K.S. admitted to committing the offenses. The recordings of these confessions were played for the trial court.

{¶11} Notwithstanding her confession, K.B. contends her adjudications are against the manifest weight of the evidence. She argues that Chief Weidenhamer targeted her based on an erroneous assumption about the spelling of her name, used an uncertified handwriting analysis to link her to the scene, and coerced her

confession by lying about the existence of video evidence.[2] K.B.'s argument is unpersuasive. *See In re J.D.*, 2023-Ohio-250, ¶ 68 (3d Dist.). Importantly, "'[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's version of the events.'" *State v. Green*, 2023-Ohio-4360, ¶ 136 (3d Dist.), quoting *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). "'Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact.'" *State v. Brentley*, 2023-Ohio-2530, ¶ 33 (3d Dist.), quoting *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). "'The trier of fact is best able "to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony."'" *Id.*, quoting *Banks* at ¶ 13, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24.

{¶12} Critically, the trial court had the opportunity to watch the video of K.B.'s and K.S.'s confessions and observe Chief Weidenhamer's live testimony. By finding K.B. delinquent, the trial court found the confessions and Chief Weidenhamer's testimony to be credible. Thus, because the trial court was in the

---

[2] At oral argument, K.B. argued for the first time that she recanted her confession after Chief Weidenhamer's body camera stopped recording. An argument raised for the first time on appeal that was not raised in the trial court is not properly before this court and is therefore waived. *See State v. Bowermaster*, 2019-Ohio-2488, ¶ 13 (3d Dist.). Even if the argument were to be considered, it presents a classic credibility determination.

best position to make that judgment, we conclude that K.B.'s adjudications are not against the manifest weight of the evidence.

{¶13} K.B.'s first assignment of error is overruled.

**Second Assignment of Error**

**The Trial Court erred by introducing the photographs as evidence due to not being properly authenticated.**

{¶14} In her second assignment of error, K.B. argues that the trial court erred by admitting the State's photographs of the graffiti because they were not properly authenticated. K.B. specifically argues that, because Chief Weidenhamer did not take the photographs and never personally visited the crime scene, she lacked the personal knowledge required to testify that the photographs were a fair and accurate depiction of the vandalism.

*Standard of Review*

{¶15} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 2006-Ohio-2815, ¶ 62. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶16} Under "Evid.R. 901(A), authentication or identification is a condition precedent to admissibility of evidence and that requirement is satisfied by 'evidence

sufficient to support a finding that the matter in question is what its proponent claims.'" *State v. Handshoe*, 2023-Ohio-3205, ¶ 31 (3d Dist.), quoting Evid.R. 901(A). "The rule provides a non-exhaustive list of illustrations as examples of authentication conforming with the rule, including, pursuant to Evid.R. 901(B)(1), 'testimony of a witness with knowledge that a matter is what it is claimed.'" *Id.*, quoting Evid.R. 901(B)(1). "The threshold for authentication is low and does not require conclusive proof of authenticity; rather, the proponent of the evidence need only demonstrate a 'reasonable likelihood' that the evidence is authentic." *Id.*, quoting *State v. Kammeyer*, 2020-Ohio-3842, ¶ 9 (3d Dist.).

{¶17} "Photographic evidence, including videotapes, can be admitted under a 'pictorial testimony' theory or a 'silent witness' theory." *Id.* at ¶ 32, quoting *Kammeyer* at ¶ 10. Under the pictorial testimony theory, a photograph is admissible if a witness, based on their own personal observation, testifies that the image is a fair and accurate representation of what it depicts. *Id.* Notably, the witness who provides this authenticating testimony does not need to be the person who took the photograph. *Id.* Under the silent witness theory, the photograph or video itself acts as a witness, which "speaks for itself" and is considered direct evidence of what it shows, without needing a witness to testify about its accuracy. *Kammeyer* at ¶ 10. To admit evidence under this theory, the reliability of the system or process that created the evidence must be proven. *Id.*

{¶18} In this case, the State properly authenticated the photographs of the vandalism. Indeed, while K.B. correctly notes that Chief Weidenhamer did not take the photographs herself, the State was not required to call the actual photographer to testify. *See In re A.F.*, 2020-Ohio-4622, ¶ 33 (3d Dist.) (noting that a photograph is admissible if a witness testifies it is a fair and accurate representation of its subject, regardless of who took the photograph or when it was taken). Instead, our review of the record reveals that the State presented the testimony of at least one witness with personal knowledge that the photographs are a fair and accurate depiction of the vandalism. Decisively, Dan Howell ("Howell"), the president of the Paulding County Agricultural Society (also known as the Paulding County Fair Board), viewed the damage at the fairgrounds firsthand and testified at trial that the photographs were an accurate representation of the graffiti that was discovered. Howell's testimony satisfies the foundational requirement for admitting photographic evidence.

{¶19} Consequently, because the State presented testimony from a witness with personal knowledge of the scene, the trial court did not abuse its discretion by finding the photographs were properly authenticated. Thus, the trial court did not abuse its discretion by admitting the photographs into evidence.

{¶20} K.B.'s second assignment of error is overruled.

{¶21} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the juvenile court.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 11-25-05

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

William R. Zimmerman, Judge

Mark C. Miller, Judge

John R. Willamowski, Judge

DATED:
/hls

-11-