[Cite as *In re O.F.*, 2023-Ohio-755.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

IN RE:

    O.F.,

DELINQUENT CHILD.

CASE NO. 4-22-09

O P I N I O N

IN RE:

    O.F.,

DELINQUENT CHILD.

CASE NO. 4-22-10

O P I N I O N

**Appeals from Defiance County Common Pleas Court
Juvenile Division**

**Trial Court Nos. 33742-7 and 33742-8**

**Judgments Affirmed**

**Date of Decision: March 13, 2023**

APPEARANCES:

*Victoria Ferry* **for Appellant**

*Joy S. O'Donnell* **for Appellee**

**MILLER, P.J.**

{¶1} Appellant, O.F., appeals the June 28, 2022 judgments of adjudication and disposition of the Defiance County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm.

### I. Facts & Procedural History

{¶2} On October 29, 2020, a complaint was filed in the trial court charging O.F. with Count One of assault of a peace officer in violation of R.C. 2903.13(A), a fourth-degree felony if committed by an adult, and Count Two of obstructing official business in violation of R.C. 2921.31(A), a second-degree misdemeanor if committed by an adult. At a November 3, 2020 hearing, O.F. entered a denial to the allegations of the complaint. At a subsequent hearing on January 15, 2021, O.F. withdrew his denial and entered an admission to the allegations of the complaint. The trial court accepted O.F.'s admission and continued disposition until a later date.

{¶3} On January 25, 2021, a complaint was filed in the Williams County Court of Common Pleas, Juvenile Division, charging O.F. with one count of assault of a corrections officer in violation of R.C. 2903.13(A), a fifth-degree felony if committed by an adult. On January 27, 2021, the Williams County court transferred the case to the trial court. The complaint was subsequently filed in the trial court on February 1, 2021. At a February 11, 2021 hearing, O.F. entered a denial to the allegations of this second complaint.

{¶4} At a hearing on March 23, 2021, O.F. withdrew his denial to the allegations of the second complaint and entered an admission. The trial court accepted O.F.'s admission. Based on this admission and on his earlier admission to the allegations of the first complaint, O.F. was adjudicated delinquent. The trial court then proceeded to disposition. For Count One of the first complaint, the trial court committed O.F. to the Department of Youth Services ("DYS") for a minimum period of six months and a maximum period not to exceed O.F.'s 21st birthday. For Count Two, the trial court committed O.F. to the Juvenile Detention Center of Northwest Ohio ("JDC") for a period of 90 days. For the single count of the second complaint, the trial court committed O.F. to DYS for a minimum period of 6 months and a maximum period not to exceed O.F.'s 21st birthday. The trial court ordered that O.F.'s DYS commitments run consecutively for an aggregate minimum commitment of 12 months and a maximum period still not to exceed O.F.'s 21st birthday. However, the trial court suspended O.F.'s DYS commitments on condition that he enter into and successfully complete programming at the Children's Center of Ohio ("CCO"). Similarly, the trial court suspended the remaining days of O.F.'s JDC commitment. Finally, the trial court placed O.F. on probation until June 30, 2022.

{¶5} On November 17, 2021, the State filed a motion to revoke O.F.'s probation claiming that O.F. violated the conditions of his probation by being

"verbally and physically aggressive toward CCO staff." On November 18, 2021, O.F. filed a written denial to the alleged probation violation.

{¶6} A review hearing was held on December 20, 2021. At the hearing, the trial court terminated O.F.'s placement at the CCO due to his unsuccessful completion of the programming at that facility. Consequently, O.F. was removed from the CCO and transferred to the JDC.

{¶7} On December 27, 2021, the State filed a second motion to revoke O.F.'s probation. The State's second revocation motion was based on O.F.'s unsuccessful termination from the program at the CCO.

{¶8} A hearing on the State's revocation motions was held on January 27, 2022. At the hearing, O.F. entered an admission to the allegations of the State's second revocation motion. The trial court accepted O.F.'s admission and dismissed the State's first revocation motion at its request. Finding that O.F. had violated the terms and conditions of his probation, the trial court reimposed O.F.'s DYS commitments, though it ultimately suspended O.F.'s DYS commitments once more and continued O.F. on probation. O.F.'s probation was conditioned on his successful completion of programming at the Juvenile Residential Center of Northwest Ohio ("JRC"). The trial court also extended O.F.'s probation until December 31, 2022.

{¶9} O.F. was accepted for placement at the JRC and admitted to the facility on February 1, 2022. Thereafter, monthly review hearings were conducted to

evaluate O.F.'s progress at the JRC. O.F.'s placement at the JRC was continued until June 7, 2022, at which time O.F. was removed from the JRC facility at its request. On June 8, 2022, the State filed a motion to revoke O.F.'s probation on grounds that O.F. "continue[d] to violate rules at JRC." At a hearing held that day, the trial court entered a denial on behalf of O.F.

{¶10} A contested hearing on the State's revocation motion was held on June 24, 2022. At the conclusion of the hearing, the trial court found that the State had proven that O.F. had violated the terms and conditions of his probation. Accordingly, the trial court revoked O.F.'s probation, adjudicated him delinquent for the probation violation, and terminated his placement at the JRC. The trial court then reimposed O.F.'s previously suspended DYS commitments. The trial court filed its judgment entries of adjudication and disposition on June 28, 2022.

## II. Assignments of Error

{¶11} On July 25, 2022, O.F. timely filed notices of appeal. O.F.'s appeals were subsequently consolidated for purposes of briefing and argument. He raises the following two assignments of error for our review:

**1. O.F. was deprived of his right to the effective assistance of counsel in juvenile court.**

**2. The lower court ruling that there was sufficient evidence to prove the count of delinquency under the Motion to Revoke Probation was against the manifest weight of the evidence.**

### III. Discussion

**A. First Assignment of Error:   Did O.F. receive ineffective assistance of counsel?**

{¶12} In his first assignment of error, O.F. argues that he received ineffective assistance of counsel.  O.F. contends that, throughout the proceedings in the trial court, his trial counsel advocated for harsher sanctions he believed to be in O.F.'s best interest rather than for less restrictive sanctions favored by O.F.  O.F. further maintains that his trial counsel made detrimental comments expressing a negative view of O.F.  In addition, O.F. claims that at the final disposition, his trial counsel failed to inform the trial court of O.F.'s expressed interests and that his trial counsel "not only failed to state whether O.F. agreed to the recommended dispositional sentence but left it entirely up to the judge's discretion."  (Appellant's Brief at 4).  O.F. argues that he was prejudiced by his trial counsel's deficient performance because it ultimately resulted in the imposition of the suspended DYS commitments rather than some less restrictive sanction.

**i. Ineffective-Assistance-of-Counsel Standard**

{¶13} "An accused juvenile has a constitutional right to counsel and the same rights to effective assistance of counsel as an adult criminal defendant."  *State v. Johnson*, 8th Dist. Cuyahoga No. 99377, 2015-Ohio-96, ¶ 51.   To prove an allegation of ineffective assistance of counsel, O.F. must satisfy a two-prong test.  First, O.F. "must establish that his trial counsel's performance has fallen below an

objective standard of reasonable representation." *In re A.F.*, 3d Dist. Defiance No. 4-20-06, 2020-Ohio-4622, ¶ 41, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984) and *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Second, O.F. "must demonstrate that he was prejudiced by counsel's performance." *Id.*, citing *Strickland* at 687. To show that he has been prejudiced by counsel's deficient performance, O.F. must prove that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, citing *Bradley* at paragraph three of the syllabus.

{¶14} "The failure to make either the deficiency or prejudice showing defeats a claim of ineffective assistance of counsel." *Id.* at ¶ 42, citing *State v. Frye*, 10th Dist. Franklin Nos. 14AP-988 and 14AP-989, 2015-Ohio-3012, ¶ 11, citing *Strickland* at 697. "Thus, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Id.*, quoting *Strickland* at 697.

**ii. O.F. failed to establish that he received ineffective assistance of counsel.**

{¶15} O.F. identifies numerous instances of his trial counsel's supposedly unreasonable and unprofessional advocacy. They include the following statements made by O.F.'s trial counsel over the course of his representation of O.F.:

- "My job is not to get the least punishment possible, my job is to get him the best punishment possible." (Mar. 23, 2021 Tr. at 22);

- "I think if we do not get a handle on [O.F.] and his fits of uncontrol [sic] rage, he is a perfect candidate for the prison system when he turns eighteen, if not [DYS] in a couple more years. * * * He needs to learn to respect authority." (Apr. 28, 2021 Tr. at 4);

- O.F. "needs to be in a structure where until he grows up and is ready to stop, he is looking at some serious incarceration, bind over, etc. I think [it is in] his best interest that he be * * * put in the [JDC] pending the completion of the investigation and possible placement." (Dec. 20, 2021 Tr. at 6);

- "I see no reason not to shackle him based upon the history. He appears to be fine to me, but in case -- he just does not seem to be a little boy who is natural. I think he has drugs in his system, but I think right now pending resolution as to these rages, he needs to be restrained." (Dec. 21, 2021 Tr. at 2);

- "I am kind of an old school person and I do not know that this [is] advocating on my client's behalf, but for one [sic] of a better phrases, if he were at [DYS] and pulled this crap, someone would be knocking him on his butt. * * * [M]aybe it just needs an old school lesson behind in the school yard." (Mar. 1, 2022 Tr. at 11);

- "[A]ll I can say is I was thinking [DYS], he needed to get knocked on his butt and maybe there would be the grand awakening. * * * Whatever you decided he needs to do. * * * I would just defer to your judgment. I just have to say my peace [sic] because I much more like the [O.F.] I talked to today than I ever have before, but I do not know if there is an answer. That is why you are the Judge." (June 24, 2022 Tr. at 88).

O.F. further observes that his trial counsel failed to convey his "express interests"

that "it was not good to remove [him] from the [JRC]." (June 8, 2022 Tr. at 6). O.F.

concludes that "rather than advocat[ing] for O.F.'s express interests and provid[ing] the protection and care as demanded by statute during disposition, counsel ma[de] detrimental statements to O.F.'s defense and even argued for tougher penalties." (Appellant's Brief at 9).

{¶16} Although it could be argued that trial counsel was working toward the long-term goal of keeping O.F. out of future trouble and even prison, we need not determine whether O.F.'s trial counsel performed deficiently by making these comments or by failing to forcefully advocate for O.F.'s stated wishes. Even assuming that O.F.'s trial counsel performed deficiently, O.F. cannot demonstrate that he was prejudiced by his trial counsel's performance. First, although O.F.'s trial counsel did not communicate O.F.'s "express interests" to the trial court, the trial court was aware of what O.F. wanted. In fact, at the June 24, 2022 revocation hearing, O.F.'s trial counsel had O.F. testify regarding his treatment. O.F. testified that he did not want to return to the JRC or go to DYS, but that he instead wanted to explore the Anger Management Program at the JDC. (June 24, 2022 Tr. at 75-76). In addition, despite the bluntness of some of O.F.'s trial counsel's comments, it is evident that O.F.'s trial counsel viewed DYS as the option of last resort and that he did not wish for O.F. to be committed to DYS. (*See* June 2, 2022 Tr. at 6-7); (*See* June 24, 2022 Tr. at 86-88).

{¶17} Finally, it is clear that O.F.'s trial counsel's comments did not have any meaningful influence on the ultimate disposition of O.F.'s case. O.F. was not

immediately committed to DYS upon his initial adjudication and disposition in March 2021. Rather, O.F. was first placed in the CCO—one of the least restrictive options available to the trial court. As the case progressed and O.F. failed to satisfactorily respond to the programming at the CCO, the trial court ordered that O.F. be placed in the JRC—an option perhaps more restrictive than the CCO but still less restrictive than DYS.

{¶18} As O.F. moved from lower-tier sanctions to higher-tier sanctions, he was repeatedly warned that his failure to change his behavior would ultimately culminate in commitment to DYS. O.F. understood the stakes. Before O.F. was discharged from the CCO and placed in the JRC, the trial court advised him that he was "on [his] last leg." (Nov. 15, 2021 Tr. at 8). When he was placed in the JRC following his unsuccessful termination from the CCO, the trial court told O.F. that "[DYS] is not my favorite choice" but that if O.F. failed to complete the programming at the JRC, the trial court would "have one choice left" and would have to commit him to DYS. (January 27, 2022 Tr. at 11, 22). At a review hearing in March 2022, the trial court informed O.F. that it was "not going to put up with this stuff much longer," and O.F. acknowledged that his failure to complete the program at the JRC would result in his commitment to DYS. (March 1, 2022 Tr. at 8, 12). And just one week before O.F. was removed from the JRC and the State filed its final motion to revoke O.F.'s probation, the trial court instructed O.F., "We have tried everything that we have available to us and the very best thing I have out

of everything that I used is where you are right now, and you are blowing it. You have one week." (June 2, 2022 Tr. at 9).

**{¶19}** Prior to imposing O.F.'s suspended DYS commitments, the trial court summarized the efforts taken to assist O.F. in changing his behavior:

> I do not think I have ever had a child in the [JRC] * * * that we tried this many times and waited this long until there were * * * five full pages of write up and violations that occurred before we actually took the ultimate step of removing you from the program. Everybody was aware of your behaviors over the years. We have all been aware and discussed it over and over and over. We tried everything we could do to change and to stop it. We have tried every tool we have. We have tried every program we have had. We even tried new programs with you. We did it for long periods of time. We have tried it with your parents. We have tried every funding source we have available to us. There is not a thing left I can think of. There is nothing left in my mind I can think of that I have not tried with you.

(June 24, 2022 Tr. at 92-93). Accordingly, it is evident that O.F. would have been committed to DYS irrespective of whether O.F.'s trial counsel advocated for O.F.'s "express interests," spoke about O.F. in more favorable terms, or urged the trial court to impose a more lenient sanction; DYS commitment was the only option the trial court had left. Therefore, as O.F. has failed to establish a reasonable probability of a more favorable outcome had his trial counsel performed differently, O.F. has failed to demonstrate that he received ineffective assistance of counsel.

**{¶20}** O.F.'s first assignment of error is overruled.

**B. Second Assignment of Error:  Is O.F.'s adjudication against the manifest weight of the evidence?**

{¶21} In his second assignment of error, O.F. argues that his adjudication is against the manifest weight of the evidence.  He argues that the evidence weighs strongly against a finding that he violated his probation by unsuccessfully completing the program at the JRC.

**i.  Manifest-Weight-of-the-Evidence Review**

{¶22} "In the juvenile context we employ the same standard of review applicable to adult criminal convictions claimed to be against the manifest weight of the evidence." *In re A.F.*, 2020-Ohio-4622, at ¶ 9, citing *In re T.L.*, 3d Dist. Allen No. 1-15-24, 2016-Ohio-252, ¶ 28.  "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."  *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**ii.  O.F.'s adjudication is not against the manifest weight of the evidence.**

{¶23} In arguing that his adjudication is against the manifest weight of the evidence, O.F. observes that just days before the State filed its motion to revoke his probation, the JRC sent a letter to the trial court stating that the "JRC continues to

be committed to working with [O.F.] and believe[s] that he would not benefit from placement at [DYS]." (State's Ex. D). He also notes that most of his infractions at the JRC were minor and that he was making consistent progress. O.F. maintains that his probation was conditioned on "enter[ing] into and successful[ly] complet[ing] the JRC program," not "refraining from any and all write-ups in the facility." (Appellant's Brief at 15). He contends that given his "age and current stage of development," and in light of the fact that he was actively participating in programming, "there was still time for [him] to complete his JRC programming." Thus, O.F. concludes, the evidence does not support that he was unable to successfully complete the program at the JRC.

**{¶24}** However, O.F.'s argument overlooks the fact that, whatever progress O.F. had been making and however willing the JRC had been to continue its work with O.F., the state of play had changed by the time the State moved to revoke O.F.'s probation. Montana Crawford, the JRC's director, testified that the JRC requested O.F.'s removal from its facility on June 7, 2022, due to O.F.'s ongoing aggressive and uncooperative behavior. (June 24, 2022 Tr. at 43). O.F. admitted that he had violated various rules at the JRC and that he had been removed from the JRC facility. (June 24, 2022 Tr. at 77). Crawford testified that by requesting that O.F. be removed from the JRC facility, O.F. did not successfully complete programming at the JRC. (June 24, 2022 Tr. at 44). Consequently, the evidence supports that O.F. did not successfully complete programming at the JRC. Since successful

-13-

completion of programming at the JRC was a condition of O.F.'s probation and the evidence overwhelmingly supports that O.F. violated this condition, the trial court did not clearly lose its way and create a manifest injustice by finding that O.F. had violated his probation or by adjudicating him delinquent on that basis.

{¶25} O.F.'s second assignment of error is overruled.

### IV. Conclusion

{¶26} For the foregoing reasons, O.F.'s assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the Defiance County Court of Common Pleas, Juvenile Division.

***Judgments Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**